[No. 2863-3. Division Three. August 9, 1979.]

NORMA C. FUNK, *Appellant,* v. ANTHONY D. FUNK, ET AL, *Respondents.*

*William M. Tugman,* for appellant.

*James K. Hayner* and *Minnick, Hayner & Zagelow,* for respondents.

McINTURFF, J.—The plaintiff, Norma Funk, personal representative of the estate of her deceased husband,

Dawson M. Funk (Mr. Funk, Sr.) seeks a declaration that certain savings account trusts created by her husband for the benefit of his son and grandchildren were revoked by his last will and testament. The defendant, Anthony Funk, son of Dawson M. Funk by a prior marriage, individually and as trustee of the savings account trusts for his two children, David Michael and Kelly, denies any intended revocation, and cross–claims for the accrued interest from the three trust accounts alleged to have been illegally converted by Mrs. Funk. The trial court granted summary judgment for Anthony Funk. Mrs. Funk appeals.

On December 3, 1971, prior to his marriage to the plaintiff, Mr. Funk, Sr. purchased two $20,000 savings certificates from First Federal Savings & Loan Association of Walla Walla (First Federal). Mr. Funk, Sr. was named trustee of the savings certificates for the benefit of his son, Anthony, and grandson, David. According to Anthony Funk and his then wife, Marilyn, these accounts were a gift from Mr. Funk, Sr., intended to provide for the college education of the grandchildren. Mr. Funk, Sr. did not exercise any control over these accounts without the prior approval of his son.

In July 1973, Mr. Funk, Sr. changed the savings accounts to their present form to obtain a higher rate of interest. At that time, Mr. Funk, Sr. applied for three separate savings accounts at First Federal and signed an agreement on the back of each application titled "Discretionary Revocable Trust Agreements." Mr. Funk, Sr. was named trustee of each account. Anthony Funk and the two grandchildren, David and Kelly, were each named beneficiary of a separate account. The proceeds from the trust account established for the benefit of Anthony Funk were to be paid directly to him upon the death of his father. Anthony Funk was appointed to serve as trustee over the two remaining trust accounts with the proceeds payable to each grandchild upon reaching the age of 21.

In January 1975, Mr. Funk, Sr. and Mrs. Funk (then Cosper), executed a prenuptial agreement. This agreement

set forth the separate assets and approximate net worth of each party. Both agreed to waive and relinquish any and all rights he or she might acquire in the other's separate property as a result of their impending marriage, except as set forth in the last will and testament of either party. The three First Federal savings certificate accounts at issue here were listed as Mr. Funk, Sr.'s separate property.

Following their marriage on January 19, 1975, Mr. and Mrs. Funk executed reciprocal wills. Under the terms of each will, the Funk community property was to pass to the survivor together with a life estate in the separate property of the deceased spouse. Mr. Funk died on March 22, 1977.

By virtue of her husband's last will and testament, Mrs. Funk claims a life estate interest in the income from the three First Federal savings account trusts. This claim is made by virtue of a provision in her husband's will which granted to her "a life estate in all of my separate property . . . but only the income from any money, bank accounts, stock, bonds, or securities which are my separate property on my death." As noted above, the First Federal savings certificate account trusts were listed as Mr. Funk, Sr.'s separate property under the prenuptial agreement. Taken together, Mrs. Funk argues these instruments provide conclusive proof of her husband's intent to revoke the savings account trusts. Anthony Funk, on the other hand, contends revocation of a written trust agreement is effective only if made in the manner specified in the trust agreement, *i.e.,* written notice to First Federal. Mr. Funk, Sr. did not give written notification of revocation to First Federal. Further, he argues a savings account trust may not be revoked by a will absent a "decisive, convincing or unequivocal" provision to that effect. The trial court agreed with Anthony Funk. In granting the defense motion for summary judgment, the court declared the savings account trusts in question revocable, but found they had not been revoked because the will did not specifically refer to the trusts.

■ In support of her argument, Mrs. Funk relies upon the rules applicable to the revocation of a Totten or tentative trust. However, as Anthony Funk correctly notes, the First Federal savings account trust contains certain features which distinguish it from the tentative or the Totten trust. The doctrine of tentative trusts emerged from the oft-quoted case of *In re Totten,* 179 N.Y. 112, 125, 71 N.E. 748 (1904), cited with approval in *In re Estate of Madsen,* 48 Wn.2d 675, 679, 296 P.2d 518 (1956):

> A deposit by one person of his own money, in his own name as trustee for another, *standing alone,* does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.

(Italics ours.) *See also* Restatement (Second) of Trusts § 58, at 155 (1959).

The First Federal savings account trusts at issue here, titled "Discretionary Revocable Trust Agreements," contain this important feature:

> Discretionary Revocable Trust Agreement
> The funds in the account indicated on the reverse side of this instrument, together with earnings thereon, and any future additions thereto, are conveyed to the trustee as indicated for the benefit of the beneficiary as indicated. The conditions of said trust are: (1) The trustee is authorized to hold, manage, pledge, invest and reinvest said funds in his sole discretion; (2) The undersigned Grantor reserves the right to revoke said trust in part or in full at any time and any partial or complete withdrawal by the original trustee, if he is the Grantor, shall be a revocation by the Grantor to the extent of such withdrawal, *but no other revocation shall be valid unless written notice is given to the institution named on the reverse side of this card;* . . .

(Italics ours.) In addition, Mr. Funk, Sr. directed that the proceeds from only one of the trusts would become payable upon his death, *i.e.*, the savings account trust established for the benefit of his son, Anthony. The savings accounts established for the benefit of the grandchildren were directed to remain subject to the trust arrangement under the authority of Anthony Funk, as successor trustee, until the grandchildren, David and Kelly, reached the age of 21, respectively.

What we have here is more than a simple tentative or Totten trust. Other than a partial or complete withdrawal of the funds, during the lifetime of the depositor, written notice to the bank is the exclusive method for revocation. The appointment of a successor trustee and specific provisions for management and disposition of the trust funds following the death of the original depositor distinguish this from a simple Totten trust made absolute upon the death of the depositor. Therefore, we conclude the instruments in question are not, in fact, Totten trusts, and the rules applicable to revocation of Totten trusts are inapposite.

The rule relating to revocation of trust instruments, in general, is found in *In re Estate of Button,* 79 Wn.2d 849, 852, 490 P.2d 731, 47 A.L.R.3d 352 (1971): "Where the trust instrument specifies the method of revocation, only that method can be used." Restatement (Second) of Trusts § 330 (1959); A. Scott, *The Law of Trusts* § 331, at 2618 (3d ed. 1967). Here, the discretionary revocable trust agreement specified written notice to the bank as the only effective means to revoke the trust, other than a partial or complete withdrawal of the funds during the lifetime of the depositor–trustee. Mr. Funk, Sr. never gave written notice to First Federal of his intent to revoke the trust agreements in question. Nor did his conduct prior to his demise indicate an intent to revoke the trusts. On the contrary, both prior to and following his marriage to the plaintiff, Mr. Funk, Sr. acted in a manner totally consistent with the continued existence of the trust arrangement.

The accounts have been held in trust without substantial change from 1971, before Mr. Funk, Sr.'s marriage to the plaintiff, until his death in 1977. The affidavits of Anthony Funk, his former wife, Marilyn Funk Burdick, and Donna Griffin, employee for First Federal, confirm Mr. Funk's expressed desire to benefit his son and to provide for the college education of the grandchildren. To infer Mr. Funk, Sr. intended to revoke the trusts and thereby give his wife a life estate in the accounts, without the benefit of any evidence to that effect, would appear to be in direct contradiction with his express intent that the funds be employed for the college education of the grandchildren. Conceivably, Mrs. Funk has a life expectancy beyond the time when the grandchildren will reach college age. Furthermore, Mr. Funk, Sr.'s will, which is alleged to have revoked the trusts, makes no mention of them and contains no language indicative of a revocatory intent.

Therefore, we affirm the decision of the trial court, but for a different reason—revocation by will was not a specified method of revocation according to the trust instrument. *In re Estate of Button, supra.*

Judgment of the Superior Court is affirmed.

ROE, J., and McCABE, J. Pro Tem., concur.