T.C. Memo. 2001-224


UNITED STATES TAX COURT


IDA MAE WHITTAKER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11433-00.                    Filed August 15, 2001.


Ida Mae Whittaker, pro se.

Sandra Veliz, for respondent.


MEMORANDUM OPINION

WOLFE, Special Trial Judge: Respondent determined a deficiency of $1,241 in petitioner's Federal income tax for 1998. The issue for decision is whether petitioner must include in her gross income annuity payments received from her deceased

husband's former employer's retirement plan.[1]  Petitioner's position is that she should not be subject to income tax on the payments in question because her deceased husband's Social Security number (SSN), rather than her own, is listed on various documents concerning the payments that she periodically received from his former employer's retirement plan.

No written stipulation of fact was filed in this case.  An oral stipulation of fact was made at trial.  The oral stipulation of fact and the referenced exhibits identified in that stipulation are incorporated herein by this reference. Petitioner resided in Tacoma, Washington, on the date the petition was filed.

Petitioner was married to Denorise Whittaker (Mr. Whittaker) until his death on October 4, 1995.  Approximately 4 months before his death, Mr. Whittaker retired from the Boeing Co. (Boeing) effective June 1, 1995.  As an employee of Boeing, Mr. Whittaker participated in the Boeing Employee Retirement Plan (plan).  When he retired, Mr. Whittaker elected a 75-percent joint and surviving spouse option, naming petitioner as his joint annuitant under the plan.  After Mr. Whittaker's death, petitioner became entitled to receive from the plan a benefit of $815.13 per month for the remainder of her life.  Pursuant to the

---

[1] Petitioner claimed an earned income credit on her 1998 tax return.  Her eligibility for the credit is a computational matter.

plan, during 1998 petitioner received a total of $9,781.56 ($815.13 each month) by direct deposit from Boeing into a bank account held by petitioner as trustee for her grandchild.

Petitioner received certain documents relating to the retirement annuity payments that bore her name, yet listed her deceased husband's SSN rather than her own. Specifically, Boeing's retirement plan account statements, which were mailed to petitioner twice each year, and the line on petitioner's monthly bank statements describing Boeing's deposit both refer to Mr. Whittaker's SSN, rather than petitioner's.

In addition, petitioner claims that Boeing sent her a 1998 Form W-2, Wage and Tax Statement, listing Mr. Whittaker's SSN. However, petitioner did not attach a Form W-2 from Boeing to her 1998 Federal income tax return, nor did she produce a copy of such a form at trial.

We consider it unlikely that Boeing sent petitioner a Form W-2, because petitioner was not employed by Boeing. See sec. 6051; sec. 31.6051-1(a)(1)(i), Employment Tax Regs.[2] As the payor of a retirement annuity, Boeing was required to send petitioner a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc. Sec. 1.6041-1(a)(2), Income Tax Regs. The evidence here

_____

[2] Unless otherwise specified, all section references are to the Internal Revenue Code in effect for the year in issue.

indicates that Boeing did in fact send petitioner a Form 1099-R. The Internal Revenue Service received a Form 1099-R from Boeing that listed petitioner's SSN and not Mr. Whittaker's SSN.

Petitioner's 1998 Federal income tax return was prepared at a local church by VITA, an organization that petitioner believes is associated in some way with Seattle University.

Petitioner claims she was told that the retirement benefits she received from Boeing were not includable in her gross income because the documents she presented listed an SSN that was not her own. Petitioner argues that because her deceased husband's SSN, rather than her own, was listed on these documents, the retirement benefits that she received from Boeing should be excluded from her gross income.

Gross income includes all income from whatever source derived, unless otherwise specifically excluded. Sec. 61(a). Annuities are specifically included in gross income. Secs. 61(a)(9), 72(a). Under section 72, amounts received as an annuity generally are includable in the recipient's gross income except to the extent that they represent a reduction or return of premiums or other consideration paid. Sec. 1.72-1(a), Income Tax Regs.

Mr. Whittaker did not make any contributions to the plan. All contributions were made by Boeing. Therefore, the full amount of each annuity payment is taxable.

Petitioner cannot avoid taxation of her annuity payments merely because Boeing administrative personnel apparently mistakenly listed Mr. Whittaker's SSN rather than petitioner's SSN on documents relating to payments made to her after Mr. Whittaker's death. The sweep of section 61 is very broad. Gross income includes "instances of undeniable accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Petitioner was entitled to the annuity payments at issue, and they were properly deposited to a bank account under her control. Petitioner has not shown that the annuity payments fall within any provision of the Code or of other law exempting or excluding them from gross income.

The bank account into which the funds were deposited appears to be a so-called Totten trust account; that is, an account belonging to the depositor with a beneficiary designated to succeed to the funds only in the event of the depositor's death. See Funk v. Funk, 598 P.2d 792, 794-795 (Wash. Ct. App. 1979).[3]

---

[3] In Funk v. Funk, 598 P.2d 792, 794 (Wash. Ct. App. 1979), the Washington Court of Appeals stated:

> The doctrine of tentative trusts emerged from the oft-quoted case of In Re Totten, 179 N.Y. 112, 125, 71 N.E. 748, 752 (1904), cited with approval in In Re Madsen's Estate, 48 Wash.2d 675, 678-79, 296 P.2d 518 (1956):

> "A deposit by one person of his own money, in his own name as trustee for another, standing alone, does not
(continued...)

Nothing in the record indicates that petitioner's grandchild owned any portion of the funds in the account. Instead, the record clearly establishes that petitioner had full control over the bank account. Copies of her bank statements show that petitioner routinely withdrew funds for personal expenditures. The facts of this case establish that the income from the plan was payable to petitioner and was paid to an account to which she directed payment and over which she exercised complete control.

Petitioner's reliance on the alleged mistaken advice of her tax preparer also has no bearing on her tax liability. Such reliance might be relevant if respondent had determined penalties or additions to tax. See, e.g., Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991); Dyckman v. Commissioner, T.C. Memo. 1999-79. But no penalties or additions to tax are in issue here. Petitioner is responsible for the deficiency in tax even though she relied on erroneous advice. See United States v. Boyle, 469

---

[3](...continued)
establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor." * * *

U.S. 241, 252 (1985); <u>De Aycardi v. Commissioner</u>, T.C. Memo. 1997-308 ("Reasonable reliance on an agent may constitute a possible defense to penalties but not to the underlying tax.").

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.