THE DETROIT BANK & TRUST COMPANY v GROUT

Docket No. 78-2361. Submitted May 2, 1979, at Detroit.—Decided
    February 5, 1980. Leave to appeal applied for.

Louise Grout Hill was the settlor in a certain inter vivos trust
    agreement dated October 30, 1945, in which Detroit Trust
    Company was designated as the trustee. In that trust instru-
    ment Selden B. Daume was designated to receive property
    constituting 1/12 of the appraised value of the corpus. Mr.
    Daume was for many years the trust officer assigned to Louise
    Grout Hill's account and had served for many years as Vice-
    Chairman of the Board of Detroit Bank and Trust Company,
    after the merger of Detroit Trust Company and the Detroit
    Bank. Mr. Daume died on December 23, 1966. Mrs. Hill died on
    December 6, 1969. In December, 1973, The Detroit Bank and
    Trust Company resigned as executor of both the estate of
    Louise Grout Hill and the estate of Selden B. Daume. The bank
    then brought an action in Wayne Circuit Court seeking instruc-
    tions as to the disposition of the funds in the trust which were
    designated to go to Mr. Daume, who allegedly had a fiduciary
    relationship with Louise Grout Hill. Named as defendants in
    this action were Gardner K. Grout II, other residuary legatees
    under the will of Louise Grout Hill, and Wilber M. Brucker,
    Jr., administrator with will annexed of the estate of Louise
    Grout Hill (referred to hereinafter as defendants Grout) and

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 703, 822.
    27 Am Jur 2d, Equity § 266.
[2] 5 Am Jur 2d, Appeal and Error § 822.
    27 Am Jur 2d, Equity § 266.
[3] 76 Am Jur 2d, Trust §§ 17, 18.
[4] 25 Am Jur 2d, Duress and Undue Influence § 38.
[5] 25 Am Jur 2d, Duress and Undue Influence § 43.
    Presumption or inference of undue influence from testamentary gift
        to relative, friend, or associate of person preparing will or procur-
        ing its execution. 13 ALR3d 381.
[6] 76 Am Jur 2d, Trusts § 203.
[7] 80 Am Jur 2d, Wills §§ 1662, 1671 et seq.
[8] 76 Am Jur 2d, Trusts §§ 4, 101 et seq.

Joyce D. Daume, widow of Selden B. Daume, and four children of Selden B. Daume (referred to hereinafter as defendants Daume). The defendants Grout filed a cross-complaint against the defendants Daume and a counter-complaint against The Detroit Bank and Trust Company asserting that Selden B. Daume had exercised undue influence over Mrs. Hill. Wayne Circuit Court, James E. Mies, J., determined that Mrs. Hill had no secret purpose in the provisions of the trust which made the gift to Mr. Daume and that it was her intent to benefit Mr. Daume (and should he pre-decease her, his heirs) solely and absolutely, that Mr. Daume was a fiduciary of Mrs. Hill at the time of this gift and trust and that, therefore, undue influence must be presumed but that other evidence negated the presumption, and that the defendants Grout were barred by the statute of limitations from raising the issue of undue influence. The defendants Grout appeal alleging that the trial court erred 1) in determining that the language making a gift to Mr. Daume constituted an absolute gift to Selden B. Daume and his heirs rather than a transfer of property in trust for the benefit of undisclosed third persons, 2) in determining that there was no undue influence exercised by Selden B. Daume, as agent of Detroit Bank and Trust Company, over the settlor in making the alleged gift, and 3) in determining that the alleged gift and trust did not lapse when Mr. Daume predeceased Mrs. Hill. *Held:*

1. In determining the intent of the settlor, it is necessary first to look to the expression of the intent in the instrument in question and to construe the instrument so that each word contained therein has meaning, if it is possible to do so. To construe the language of the disputed portion of the trust instrument so as to impose a resulting trust on Mr. Daume or his heirs would require ignoring or deleting a portion of the disputed paragraph. The trial court's construction of the disputed paragraph to the effect that there was no secret purpose other than to benefit Mr. Daume and his family was consistent with the evidence. The trial court's finding of an absolute gift to Mr. Daume from this paragraph is affirmed.

2. It is undisputed that a fiduciary relationship existed between Mr. Daume and Mrs. Hill. Accordingly, it is clear that a presumption of undue influence is raised. The defendants Grout had the ultimate burden of proof on the issue of undue influence. There was sufficient evidence presented to establish the presumption of undue influence by Mr. Daume. However, in light of evidence rebutting the presumption of undue influence, it is clear that even if the gift to Mr. Daume were the product

of undue influence in the execution of the 1945 trust agreement, Mrs. Hill's subsequent actions, free from any undue influence, served to ratify the original trust agreement. The gift to Mr. Daume was not the product of undue influence.

3. It is clear in this case that Mrs. Hill created a vested remainder, subject to revocation, in Selden B. Daume. An inter vivos trust creates a present interest in property, albeit, as in this case, an expectant interest. Where words of absolute grant are used to create that interest, it must be determined to be a vested interest. The only condition that could defeat Mr. Daume's interest in the Hill trust would have been a revocation by the settlor. Such an interest is descendible, devisable and alienable. The vested remainder to Selden B. Daume did not lapse by reason of his predeceasing Mrs. Hill and was descendible to his heirs.

Affirmed.

1. APPEAL AND ERROR — EQUITY — DE NOVO REVIEW.
   Appellate review of equity actions is *de novo.*

2. APPEAL AND ERROR — EQUITY — DE NOVO REVIEW — FINDINGS OF FACT — COURT RULES.
   *De novo* appellate review of equity cases is not in conflict with nor has it been altered by the court rule which requires that a trial judge's findings of fact shall not be set aside unless clearly erroneous and that in review of the findings of fact regard shall be given to the special opportunity of the trial court to judge the credibility of witnesses (GCR 1963, 517.1).

3. TRUSTS — SETTLOR'S INTENT — APPEAL AND ERROR.
   It is necessary that the Court of Appeals, in determining the intent of a settlor, first look to the expression of the intent in the instrument in question and construe the instrument so that each word contained therein has meaning, if it is possible to do so.

4. TRUSTS — FIDUCIARY RELATIONSHIP — UNDUE INFLUENCE — PRESUMPTIONS.
   A presumption of undue influence is raised where a fiduciary relationship exists between a settlor of a trust and a beneficiary of the trust.

5. EVIDENCE — UNDUE INFLUENCE — BURDEN OF PROOF.
   The ultimate burden of proof in an undue influence case rests upon the party asserting undue influence.

6: TRUSTS — UNDUE INFLUENCE — VOIDABLE TRUST.

A trust agreement which is induced by undue influence is merely voidable; it may be ratified by the grantor upon his restoration to freedom of action.

7. WILLS — PREDECEASED LEGATEE — ANTI-LAPSE STATUTE — STATUTES.

A bequest or devise is held to lapse or revert back to a testator's estate when a legatee predeceases the testator unless the provisions of the anti-lapse statute apply (MCL 702.11; MSA 27.3178[81]).

8. TRUSTS — INTER VIVOS TRUSTS — PRESENT INTEREST IN PROPERTY — EXPECTANT INTEREST — STATUTES.

An *inter vivos* trust creates a present interest in property, although it may be an expectant interest, and where words of absolute grant are used to create an expectant interest it is a vested interest; an interest which is subject only to revocation by the settlor is descendible, devisable and alienable (MCL 554.35; MSA 26.35).

*Miller, Canfield, Paddock & Stone* (by *Gilbert E. Gove*), for plaintiff.

*McInally, Brucker, Newcombe, Wilke & DeBona* (by *Wilber M. Brucker, Jr.*, and *Wayne G. Wegner*), for defendants Grout.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *W. Gerald Warren*), for defendants Daume.

Before: J. H. GILLIS, P.J., and BEASLEY and R. B. WEBSTER,* JJ.

R. B. WEBSTER, J. This cause is an appeal from a decision of the Wayne County Circuit Court instructing plaintiff, The Detroit Bank and Trust Company as to the disposition of certain funds subject of an inter-vivos trust agreement and dismissing counter and cross-claims asserted by defendants Gardner K. Grout II, Louise Grout Brig-

---

* Circuit court judge, sitting on the Court of Appeals by assignment.

ham, Gardner K. Grout III, and Wilber M. Brucker, Jr., administrator with will annexed of the estate of Louise Grout Hill, deceased. These defendants will be collectively referred to, hereinafter, as the defendants Grout.

The following factual summary frames the present controversy.

Louise Grout Hill, deceased, was the settlor in a certain trust agreement dated October 30, 1945, in which Detroit Trust Company was designated trustee. This action arises from a complaint filed by the bank seeking instructions designating to whom the proceeds being held under paragraph III (E) of that trust should be paid. That paragraph provides:

"Property constituting one-twelfth (1/12th) of the appraised value of the corpus shall be paid over and delivered by the Trustee to Selden B. Daume of Grosse Pointe Farms, Michigan, his heirs and assigns, and for purposes which he understands and which have been thoroughly discussed between said Donor and the said Selden B. Daume. I do not, however, create or impose any condition, trust, duty or obligation with respect to such one-twelfth (1/12th) but, on the contrary, give the same to Selden B. Daume in absolute legal and equitable ownership."

Selden B. Daume was the President of Detroit Trust Company, which was later merged into The Detroit Bank and Trust Company. Defendant Gardner K. Grout II is the adopted son of Louise G. Hill, and Louise Grout Brigham and Gardner K. Grout III are his children and all are residuary legatees under the will of Louise G. Hill. Wilber M. Brucker, Jr., is the administrator with will annexed of the estate of Louise Grout Hill.

Joyce D. Daume is the widow of Selden B.

Daume, and Daphne M. Daume, Selden B. Daume, Jr., Samuel D. Daume and Susan D. Lambrecht are the children of Selden B. Daume. These defendants will be collectively referred to, hereinafter, as the defendants Daume.

Louise G. Hill, born in 1872, died in Pasadena, California, on December 6, 1969, at age 97. Mrs. Hill had been married to Arthur Hill in 1898 and widowed from him in 1909. Arthur Hill was a prominent Michigan lumberman. Subsequent to his death, Mrs. Hill married Landon C. Rose in 1912 and was divorced from him in 1925. She remained single until her death. In 1925 Mrs. Hill began doing business with the Detroit Trust Company. She established a trust, known as No. 14367, in January, 1940, which was subsequently modified by supplemental agreements dated April 27, 1942, and May 23, 1945. On October 30, 1945, a new trust instrument was executed, also being known as trust No. 14367. Selden B. Daume was born in 1897 and subsequently became an attorney. He first became employed by the Detroit Trust Company in 1927, and became its president in 1941. After a series of mergers, Mr. Daume became Vice-Chairman of the Board of The Detroit Bank and Trust Company in 1956. He suffered a slight stroke in that year but continued his employment to his retirement in 1962 at the age of 65. He died on December 23, 1966, at the age of 70.

Mr. Daume had first met Mrs. Hill in 1931 and became the trust officer assigned to her accounts from 1933 to 1960, when he was succeeded by Andrew Davison. He served at her request as a member of the board of directors of several companies in which she held a controlling interest.

Gardner K. Grout II was born in 1904. He was

the son of Louise G. Hill's sister. The sister was divorced subsequently and Mr. Grout was adopted by Mrs. Hill in 1915. He graduated from the United States Naval Academy and served in World War II in the Navy in California near where Mrs. Hill resided. He was employed from 1946 to 1958 in his own corporation, Grout and Horn, a distributor for Union Carbide Co. He also served as a member of the board of directors of various Hill interest companies. His children, Gardner Grout III and Louise Grout Brigham were born on January 21, 1933, and March 26, 1930, respectively.

The record in this cause indicates, and the trial judge found, that during the period of Mr. Daume's relationship with Mrs. Hill, a close fiduciary relationship developed between them as well as a close personal friendship. From 1931 when Mr. Daume first became a trust officer assigned to Mrs. Hill, through October 30, 1945, when the trust agreement which is the subject of this action was executed, the record in this cause indicates that Mrs. Hill consulted regularly with Mr. Daume and was deeply grateful for his services to her. During this period Mrs. Hill relied on Mr. Daume for advice relative to her financial affairs and the disposition of her estate. She expressed deep gratitude for his services and offered gifts to him periodically. She developed a social relationship with Mrs. Daume and in 1938 gave her a Packard convertible. Additionally, she made gifts to the Daume children during this period.

There was a policy at the Detroit Trust Company prohibiting acceptance of gifts by trust officers from trust customers without executive committee approval. Both Mrs. Hill and Mr. Daume were obviously aware of this policy as exemplified by correspondence between them.

On January 18, 1940, Mrs. Hill entered into a new trust agreement with the Detroit Trust Company, trust No. 14367. Selden B. Daume executed the agreement on behalf of the Detroit Trust Company. It provided for family members in various fractions, and assets of value $1,229,241.11 were contributed to this trust. On April 27, 1942, Mrs. Hill executed a supplemental trust agreement with Detroit Trust Company, executed on behalf of the company by Mr. Daume. This supplemental agreement did not fundamentally alter Mrs. Hill's estate plan for her family. In 1944 there was correspondence between Mrs. Hill and Mr. Daume in which she sought advice relative to the making of gifts during her lifetime for certain individuals. She apparently requested a list of Mr. Daume's children for the purpose of making gifts. It is believed by Mrs. Daume that Mrs. Hill gave $5,000 bonds to the Daume children at approximately this time.

On May 23, 1945, a supplemental agreement was executed between Mrs. Hill and the Detroit Trust Company involving the disposition of one-twelfth of the corpus of the trust and making other changes. No fundamental changes were made in the basic estate plan in this document. At this time, however, there was correspondence indicating that Mr. Daume had made a trip to California, where Mrs. Hill resided, at a time that was apparently most difficult for Mrs. Hill. She expressed her deep gratitude to Mr. Daume for his sacrifices in connection with this trip. This letter was dated May 26, 1945, three days after the execution of the supplemental agreement. Later that year the series of events leading to the execution of the instant trust agreement of October 30, 1945, occurred.

On October 17, 1945, Mrs. Hill addressed a letter to the Detroit Trust Company informing the company that she wished Mr. Daume to become a beneficiary to the extent of one-twelfth of the residuary property in the trust. That letter read as follows:

"The death of my sister Harriet E. Grout, and other changed conditions has led me to feel that it would be well to make some changes in my trust agreement with the Detroit Trust Company which is numbered 14367. These changes I have carefully discussed with the president, Selden B. Daume, who has been closely associated with my affairs and the companies in which I am interested for many years, and is also a close personal friend. One of these changes in my trust is the inclusion of Mr. Daume as a beneficiary to the extent of 1/12 of the residuary property which will constitute my trust after death. In phrasing this provision I have asked that the words 'for purposes which he understands' be included.

"It has occurred to me that Mr. Daume may in some way be embarrassed by the inclusion of his name—and as a matter of fact he has shown considerable hesitancy in the matter. Therefore I am writing this letter so that in the event it is ever necessary it can be exhibited by him, or by you to explain my position. There are certain matters which I wish carried out after my death with which Mr. Daume is perfectly familiar. These are things that I wish done without including them in any Will or Trust agreement, and I know he will meticulously follow my wishes. I do not however, wish him to be accountable to to [sic] any person or persons, or to have his actions subject to review which could only lead to embarrassment for him which I most certainly wish to avoid.

"There is complete understanding between us, and

Mr. Daume is included as a beneficiary at my *very earnest solicitation* and *request.*

> "Yours very truly
> "signed Louise G. Hill"

This letter was found in the safe deposit box of Mr. Daume after his death in December, 1966. Its contents were never disclosed to Gardner Grout III or Louise Grout Brigham until after Mrs. Hill's death. On October 18, 1945, Mrs. Hill wrote a note on stationery of the Hotel Bancroft, Saginaw, Michigan, to "My dear Mr. Daume" which enclosed the above cited letter dated October 17, 1945. That note reads as follows:

> "I've carefully written the enclosed letter in longhand with the hope that it is legible. I think I've even misspelled a word—to prove it is mine."

Mr. Daume then contacted Edward Reid, an attorney with Miller, Canfield, Paddock and Stone. That law firm had prepared the trust agreement of January 18, 1940, and the supplemental agreement of April 27, 1942. The firm was general counsel for Detroit Trust Company. Mr. Reid had never contacted or consulted with Mrs. Hill, obviously acting solely on behalf of Detroit Trust Company. He did not meet Mrs. Hill until 1967. Mr. Daume informed Mr. Reid that he had reached an understanding with Mrs. Hill that he was to receive a one-twelfth interest in the residue of the trust for an undisclosed purpose and that he wished Mr. Reid to redraft the trust agreement so as to make this change. He stated that the purpose was confidential and refused to make further disclosure relative to it. Mr. Reid redrafted the trust agreement, *in toto,* and included the following Paragraph III (E):

"Property constituting one-twelfth (1/12th) of the appraised value of the corpus shall be paid over and delivered by the Trustee to Selden B. Daume of Grosse Pointe Farms, Michigan, his heirs and assigns, and for the purposes which he understands and which have been thoroughly discussed between said Donor and the said Selden B. Daume."

Upon receipt of this draft, Mr. Daume again contacted Mr. Reid and indicated that there was ambiguity as to whether he, Mr. Daume, was to have the one-twelfth interest absolutely and forever. He requested Mr. Reid to redraft the provision so as to state his absolute ownership of the one-twelfth interest. Mr. Reid then added the following sentence to Paragraph III (E):

"I do not, however, create or impose any condition, trust, duty or obligation with respect to such one-twelfth (1/12th) but, on the contrary, give the same to Selden B. Daume in absolute, legal and equitable ownership."

Mr. Daume approved of this amended language.

The original and three copies of the trust agreement were forwarded by Mr. Reid to Mr. Daume of Detroit Trust Company. The agreement was executed by Mrs. Hill at the company's offices on October 30, 1945. Her signature was witnessed and the document was notarized by employees of Detroit Trust Company.

Subsequent to this event Mr. Daume stated to his wife that Mrs. Hill had done something "perfectly wonderful for us".

Thereafter, Mr. Daume disclosed to the trust officers of the trust company that he was a beneficiary of Paragraph III (E) and that he agreed to carry out Mrs. Hill's wishes and desires with regard to the one-twelfth interest. He stated:

"They were her own ideas, the substantive matter is hers. He would assist her with respect to form and procedure."

He did not disclose what the desires or wishes were. At approximately this time he also stated to Mr. Davison that Mr. Reid was Mrs. Hill's attorney in the matter. In 1950 Mrs. Hill made a gift of approximately $500,000 from this trust. The correspondence relative to this partial distribution indicated that Mrs. Hill wished Mr. Daume to make the distribution and to follow the terms of the trust in the distribution. There is correspondence at this time indicating the awareness of Gardner Grout II of the distribution. As a one-twelfth beneficiary Mr. Daume received securities and cash having a total value of $42,901.67.

It was at this time that Gardner Grout II first learned that Mr. Daume was a named beneficiary "for certain purposes with which he is familiar". He testified that he asked his mother about this and she "froze". She refused to discuss the matter further with him and indicated that if he did not like it, he could change his own will.

Thereafter, Detroit Trust Company was acquired in August, 1956, by The Detroit Bank and Trust Company. Mr. Daume became Vice-Chairman of the Board of Detroit Bank and Trust Company and continued his relationship with Mrs. Hill and his supervision of the Hill Trust. In 1958 Mrs. Hill addressed a letter to Mr. Daume requesting him to distribute surplus cash to friends and relatives. She stated the names and amounts to be paid. Mr. Daume received $1,000 as a result of this distribution. In addition, an accounting from the bank dated June 25, 1958, indicated that on September 24, 1957, Mr. Daume had been given a check for $3,000. The personal income tax return of Selden

B. Daume and his wife, Joyce D. Daume, for 1959 indicates that Mr. Daume sold 50 shares of Booth Kelley stock in 1959 at $4,250 per share and achieved a gain of $204,900 over the cost to Mrs. Hill. Mr. Daume had received these shares in the 1950 distribution from the trust in question. In 1962 Mr. Daume expressed fears that some members of the Hill family would unduly influence Mrs. Hill to give them additional funds. He requested Mr. Reid to prepare an instrument dated August 9, 1962, and executed by Mrs. Hill making the trust irrevocable. Mr. Reid had no contact with Mrs. Hill at this time.

Mr. Daume retired from The Detroit Bank and Trust Company on November 1, 1962. One year later, in November of 1963, Mr. Davison, Mr. Thurber and Gardner Grout II visited Mrs. Hill at her apartment in Pasadena, California. A purpose of this visit was to inform Mrs. Hill that Mr. Daume had retired from the bank. Although Mrs. Hill had previously met Mr. Davison, she did not recognize him.

On June 30, 1964, Mrs. Hill executed her last will and testament, which was designed to cover any property not included in her trust.

Mr. Daume died on December 23, 1966.

On January 29, 1967 Cleveland Thurber, Jr., Edward S. Reid and Gardner Grout II again visited Mrs. Hill in Pasadena, California. Both Mr. Reid and Mr. Thurber were present for the purpose of apprising Mrs. Hill of Mr. Daume's death and inquiring about the purpose of the one-twelfth residual interest for Mr. Daume in the trust. They found her incapable of understanding her circumstances and unresponsive to news of Mr. Daume's death.

On February 22, 1968, Mr. Reid and Mr. Thur-

ber again visited Mrs. Hill. They found her unable to respond in any way to any of her affairs. It is clear from the record that Mrs. Hill from that time forward was mentally incompetent. Mr. Thurber and Mr. Reid visited Mrs. Hill on several occasions thereafter and were able to note only that her condition had further deteriorated and that they were unable to discover the purpose of the provisions of paragraph III (E) of the trust.

Mrs. Hill died on December 6, 1969, at the age of 97. Thereafter, Mr. Thurber informed defendants Grout that plaintiff was unable to determine what the "purposes" mentioned in paragraph III (E) were, and that, accordingly, plaintiff would seek instructions from the Wayne County Circuit Court. He suggested that defendants Grout obtain counsel.

In December, 1973, Detroit Bank and Trust Company resigned as executor of both the estate of Louise Grout Hill and the estate of Selden B. Daume and commenced these proceedings.

The amended pleadings of the defendants Grout assert their contentions that Mr. Daume exercised undue influence over Mrs. Hill. The defendants Grout have further filed a cross-claim against the defendants Daume seeking to trace assets received by Mr. Daume from the Hill trust during his lifetime. They assert a counterclaim against the plaintiff alleging its responsibility for acts of undue influence practiced by its trust officer, Mr. Daume, with regard to the lifetime gifts made to Mr. Daume.

The total value of the one-twelfth interest in dispute on November 20, 1972, the date of allocation, was $411,412. On September 15, 1977, this value was $226,010. The fifty shares of Booth Kelley Lumber Co. stock distributed to Mr. Daume

in 1950 were sold by him for $204,900. Other assets distributed to Mr. Daume have not been traced. Defendants Grout contend that all of these assets should become part of the estate of Louise G. Hill, deceased.

After trial of this cause without a jury, the acting circuit court judge determined:

1. That Mrs. Hill had no known disclosed secret purpose in the provisions of paragraph III (E) of the trust and that it was her intent to benefit Mr. Daume (and should he pre-decease her, his heirs) solely and absolutely.

2. Mr. Daume was a fiduciary of Mrs. Hill at the time of this gift and trust and that, therefore, undue influence must be presumed. The trial court determined that other evidence negated the presumption.

3. The trial court determined that the Grout heirs were barred from raising the issue of undue influence by the statute of limitations, MCL 487.513; MSA 23.710(213).

This appeal presents three issues for decision.

## I

Did the lower court err in determining that the language in dispute in Paragraph III (E) of the trust agreement constituted an absolute gift to Selden B. Daume and his heirs, rather than a transfer of property in trust for the benefit of undisclosed third persons?

At the outset it should be stated that this is an equitable action and appeal is *de novo. Smith v General Mortgage Corp,* 73 Mich App 720, 728; 252 NW2d 551 (1977). While it is true that GCR 1963, 517.1 requires that the "findings of fact shall not be set aside unless clearly erroneous", our Su-

preme Court has not found this court rule to be "in conflict with or [to have] altered an appellate court's *de novo* power in a chancery case as formerly known and exercised". *Papin v Demski,* 383 Mich 561, 568; 177 NW2d 166 (1970). The effect of the rule as applied to *de novo* review is to require that "'regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it' ". *Id.* In this regard we note that this cause was tried primarily on stipulations of fact and depositions admitted in evidence.

The defendants Grout contend that the language of the disputed paragraph evinces an undisclosed secret purpose for the transfer to Mr. Daume. Since Mr. Daume pre-deceased the donor and there is no evidence of the purposes for which the trust was created, appellants contend that it must fail and a resulting trust must be imposed for the benefit of the donor's estate. Paragraph III (E) of the trust provides:

"Property constituting one-twelfth (1/12th) of the appraised value of the corpus shall be paid over and delivered by the Trustee to Selden B. Daume of Grosse Pointe Farms, Michigan, his heirs and assigns, and for purposes which he understands and which have been thoroughly discussed between said Donor and the said Selden B. Daume. I do not, however, create or impose any condition, trust, duty or obligation with respect to such one-twelfth (1/12th) but, on the contrary, give the same to Selden B. Daume in absolute, legal and equitable ownership."

In determining the intent of the settlor, it is necessary that this Court first look to the expression of the intent in the instrument in question and construe the instrument so that each word contained therein has meaning, if it is possible so

to do. *Quarton v Barton,* 249 Mich 474, 476; 229 NW 465 (1930), *Rivenett v Bourquin,* 53 Mich 10, 13; 18 NW 537 (1884), *Union Guardian Trust Co v Nichols,* 311 Mich 107; 18 NW2d 383 (1945). As stated in *Tonnelier v Westin,* 302 Mich 213, 217; 4 NW2d 523 (1942):

"In the last analysis, however, all the words in the will must be taken into consideration."

It should be apparent that to construe the above disputed paragraph of the Hill trust instrument to impose trust conditions upon Selden B. Daume, it would be necessary to ignore or delete the second sentence of that paragraph entirely from the trust instrument. The settlor indicated that one-twelfth of the corpus is to be given to Selden B. Daume, his heirs and assigns, "for purposes which he understands and which have been thoroughly discussed between said Donor and the said Selden B. Daume". Standing alone such language would indeed impose a resulting trust upon Mr. Daume or his heirs. The settlor however, goes on to state that she does not "create or impose any condition, trust, duty or obligation" on Mr. Daume with regard to this gift but gives him absolute legal and equitable ownership. That language is clear and unambiguous and constitutes an absolute gift to Selden B. Daume without obligation or duty relative to the so-called "purposes" referred to in the previous sentence. The language of the first sentence relative to "purposes", when considered in conjunction with the second sentence, can be construed to comport with a desire of the settlor to make an outright gift to Mr. Daume for his personal use. As stated in Bogert, The Law of Trusts and Trustees (2d), § 46, p 326: "The mere *statement of the purpose* for which a gift is made does

not *per se* show an intent to make the donee a trustee to accomplish that purpose." This is especially so when considered in light of the factual circumstances of the settlor and her relationship with Mr. Daume at the time of execution of the instrument. Such a construction gives effect to all of the words of the disputed paragraph. This Court cannot divine any construction of the instrument that imposes trust obligations upon Selden B. Daume without completely ignoring the express language of the second sentence of the paragraph. Accordingly, this Court is satisfied that the trial court's conclusion relative to construction of this instrument is correct.

The trial court found that its construction of the disputed paragraph to the effect that there was no secret purpose other than to benefit Mr. Daume and his family was consistent with the evidence. Of particular interest in the trial court's findings in this regard is the fact that prior to the execution of the trust agreement on October 30, 1945, Mrs. Hill had indicated deep appreciation for Mr. Daume's services and had made gifts previously to his wife and to his children. Specifically, she had given each of the Daume boys a bond in the amount of $5,000 and purchased a Packard convertible for Mrs. Daume. There is evidence in this record to indicate that Mrs. Hill was aware of the policy of the Board of Trustees of Detroit Trust Company relative to gifts to trust officers and that she was sensitive to that policy. As she stated in her letter of October 17, 1945:

"It has occurred to me that Mr. Daume may in some way be embarrassed by the inclusion of his name—and as a matter of fact he has shown considerable hesitancy in the matter."

The trial court said that it was plausible to conclude that the "purpose language" was designed by Mrs. Hill to avoid any problems with Mr. Daume's employer. Defendants Grout argue that any such purpose or motive by Mrs. Hill would be "illegal" and therefore such intent may not be considered by the court. This record indicates that no attempt was made by Mr. Daume to conceal the existence of this paragraph from his employer and that it was discussed by him with his fellow trust officers during the course of an annual review of each trust serviced by the various trust officers of the company. The policy of the bank was not to prohibit any gifts, but rather to require approval of such provisions by the trust company. While it is true that there is no evidence that Mr. Daume sought express approval, it cannot be said that his conduct under the circumstances was illegal or in any way constituted a fraud upon the trust company. The relationship between Mrs. Hill and Mr. Daume at the time of execution of paragraph III (E) indicated a predisposition on Mrs. Hill's part to make gifts to Mr. Daume's family and a desire to make gifts to him. This evidence is consistent with the conclusion of the trial judge giving effect to all of the words of paragraph III (E). Equally consistent with such conclusion is the subsequent conduct of Mrs. Hill and Mr. Daume relative to the partial distribution from the trust in 1950. Mr. Daume received a substantial distribution in the form of stock in Booth Kelley Lumber Company and cash. Mrs. Hill filed a gift tax return showing a gift to Mr. Daume personally and not in trust. The proofs in this cause indicate that the proceeds of this distribution were used by Mr. Daume personally.

Accordingly, the trial court's findings relative to construction of paragraph III (E) of the Hill trust are affirmed.

## II

Did the trial court err in determining that there was no undue influence exercised by Selden B. Daume, as agent of The Detroit Bank and Trust Company, over the settlor, Louise Grout Hill, in making the alleged gift?

In this case all parties concede that a fiduciary relationship existed between Mr. Daume and Mrs. Hill. Accordingly, it is clear that a presumption of undue influence is raised. The defendants Grout contend that the trial court misconstrued the effect of the presumption of undue influence and erred in concluding that there was insufficient evidence to sustain the burden of proof imposed upon the party asserting undue influence. In *Kar v Hogan,* 399 Mich 529; 251 NW2d 77 (1976), the Supreme Court held that the ultimate burden of proof in undue influence cases rests upon the party asserting undue influence. The Court stated that the presumption of undue influence was established by proof of a confidential or fiduciary relationship between a grantor and a fiduciary when the fiduciary benefited from the transaction and had an opportunity to influence the grantor's decision in the transaction. The Court further held that the burden of persuasion remained upon the party asserting undue influence throughout the trial, but that the burden of going forward with evidence that the transaction was free of undue influence was on the defending party once the presumption was raised. The Court clearly held that the presumption of undue influence was substantive evidence and that the burden of persuasion was satisifed if the defending party failed to rebut the presumption with sufficient evidence.

It is true that the trial court in its findings of fact repeatedly referred to an absence of proof of

direct compulsion, duress or fraudulent deception being imposed upon Mrs. Hill by Mr. Daume at any time and did not specifically refer to evidence rebutting the presumption. However, for the reasons stated below, and after examination of the record in this cause, this Court is satisfied that the presumption of undue influence was rebutted by a preponderance of the evidence.

The defendants Grout contend that the initial presumption of undue influence is supported by the circumstances of execution of the trust agreement on October 30, 1945, the fact that the correspondence files of The Detroit Bank and Trust Company from January 1, 1945, to January 1, 1948, on this trust account are missing, and by Mr. Daume's failure to provide Mrs. Hill with independent counsel before the trust agreement. They further contend that the very nature of the close personal relationship between Mr. Daume and Mrs. Hill is supportive of undue influence.

It is true that at the time of execution of the trust agreement Mr. Daume instructed Mr. Reid of Miller, Canfield, Paddock and Stone as to the contents of that instrument and specifically requested the addition of the second sentence of that paragraph, so as to evince an intent of absolute gift. Mr. Reid was retained to act on behalf of the trust company and his bill for services was paid by it. He never met Mrs. Hill until 1962. There can be no question that Mrs. Hill received no independent counsel from Mr. Reid at the time of execution of the trust instrument. The absence of independent advice and counsel at the time of execution of this instrument combined with the conceded fact of Mr. Daume's fiduciary relationship with Mrs. Hill would, under those circumstances standing alone, constitute sufficient evidence to

sustain the burden of proof of undue influence. If this were the totality of evidence in this cause, we would hold that the presumption of undue influence had not been rebutted by sufficient evidence. Clearly, the better practice for any trust officer would have been to insist upon independent review and advice to the settlor at the time of execution. In this regard see *In re Wood Estate,* 374 Mich 278; 132 NW2d 35 (1965), and *Kar v Hogan, supra.*

In this case, however, the record sustains findings that Mrs. Hill was an intelligent and fairly strong-willed person with an understanding of financial and tax matters and that the initial suggestions of gifts to Selden B. Daume originated in Mrs. Hill's mind. Further, there are subsequent acts of the settlor indicating ratification of her original intent under such circumstances as to rebut the presumption of undue influence. It has been held that a trust agreement which is induced by undue influence is merely voidable. *Vanderlinde v Bankers Trust Co of Muskegon,* 270 Mich 599, 604; 259 NW 337 (1935). It may be ratified by the grantor upon his "restoration to freedom of action". *Id.* In the instant case, on at least three occasions, Mrs. Hill acted in such manner as to show her continuing intent to ratify the gift to Daume. In 1950 she made a partial distribution of the trust property in accordance with the schema established by her trust agreement. At that time Mr. Daume reminded her that he would receive a portion of the trust corpus. Gardner Grout II was directly involved in the planning and execution of this distribution. Mrs. Hill was located in California at this time and was using Gardner Grout II as one of her advisors. Further, it was at this time that Mr. Grout questioned Mrs. Hill about the

wisdom of paragraph III (E) of her trust agreement. In this regard he testified that upon questioning her she "froze" and replied that if Mr. Grout did not like this provision of her trust agreement he could change his own will. These facts do not comport with the classic situation of direct control constituting coercion and duress of such force as to vitiate the free will of the donor. Further, there is evidence that at the time of this distribution Mrs. Hill expressed her delight and pleasure in it.

Again, in 1962, Mrs. Hill signed a trust amendment which expressly ratified the previous provisions of the trust. The amendment was executed in California in the presence of Mr. Grout. Singifi-cantly, this amendment made the provisions of the inter vivos trust irrevocable by Mrs. Hill alone. That instrument provided:

"Donor hereby declares that each and every of the foregoing powers, heretofore exerciseable solely by her shall hence forth continue to be exerciseable by her, but only in conjunction with and with the approval of the Detroit Bank & Trust Company (formerly Detroit Trust Company). In all other respects donor hereby ratifies and confirms said deed of trust."

While it is true that there was no independent legal counsel at the time of execution of this amendment, it is also true that the amendment was executed in the presence of Gardner Grout III after being forwarded to him by Mr. Daume for Mrs. Hill's signature. It was executed in California without the presence of Mr. Daume. In 1964, Mrs. Hill executed what was to become her last will and testament. This document was subsequently admitted to probate in 1969. There can be no question of her testamentary capacity at the time

of execution of the last will and testament. Her last will was prepared by independent legal counsel and she received independent advice relative to it.

Under all of these circumstances this Court is satisfied that it must affirm the conclusion of the trial court that Louise Grout Hill ratified the execution of the original trust instrument by her subsequent conduct.

### III

Did the trial court err in determining that the alleged gift and trust did not lapse where the beneficiary predeceased the grantor?

This issue presents an apparent question of first impression in this state. The trust instrument in this cause created a funded inter vivos trust in which the settlor granted:

"To Selden B. Daume of Grosse Pointe Farms, Michigan, his heirs and assigns"

property constituting one-twelfth of the corpus of the trust to be paid over and delivered to Selden B. Daume upon the death of the settlor. Throughout the term of this trust prior to the death of Mrs. Hill it was revocable either by her act alone or by Mrs. Hill and the trustee. The defendants Grout argue that the law applicable to estates of decedents should be held applicable to the resolution of this issue. It is true that in this state, when a legatee predeceases a testator the bequest or devise is held to lapse and reverts back to the testator's estate, unless the provisions of the anti-lapse statute, MCL 702.11; MSA 27.3178(81), apply. That statute provides in pertinent part:

"When a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, leaving issue who shall survive the testator, such issue shall take the estate so given by the will, in the same manner as the devisee or legatee would have done, if he had survived the testator; unless a different disposition shall be made or directed by the will; Provided, however, That except in the case of a residuary devise or legacy, such issue shall not take the devise or bequest where the relationship of the devisee or legatee to the testator is beyond the fourth degree, but in such case the devise or legacy shall become a part of the residue of the estate."

Obviously, the statute is not applicable in the instant cause since Mr. Daume was not related to Mrs. Hill.

The defendants Daume contend that the general rule found in other jurisdictions pertinent to inter vivos trusts is different from that applicable to estates of decedents. They contend that the words of the trust instrument in this cause created a present interest in Selden B. Daume and his heirs and assigns subject only to revocation by the grantor or settlor during her lifetime. Accordingly, they argue that this Court should follow the weight of authority and hold that Mr. Daume was given a vested remainder subject only to divestment and that accordingly his interest descended to his heirs. In holding that Selden B. Daume's interest did not lapse by reason of his predeceasing Mrs. Hill, the trial court followed the opinion of the Supreme Court of Ohio in *The First National Bank of Cincinnati v Tenney,* 165 Ohio St 513; 60 Ohio Op 481; 138 NE2d 15 (1956). In that case an inter vivos trust was established wherein the settlor reserved a power of revocation. The beneficiary of the trust was to receive the corpus upon the death of the trustor. No alternate beneficiary was

named. The beneficiary predeceased the settlor. The Supreme Court of Ohio held that the trust created a vested remainder subject to be divested before revocation. The Court then reasoned that since Ohio statutory and case law states that remainders are alienable, descendible and devisable, a beneficiary's interest passed to the beneficiary's heirs, subject to the same power of revocation. Since the trust was not revoked, the interest of the beneficiary's heirs became indefeasible upon the settlor's death. This principle was re-affirmed in Ohio in *Smyth v The Cleveland Trust Co,* 172 Ohio St 489; 179 NE2d 60 (1961). The same issue was decided in *Randall v Bank of America National Trust & Savings Ass'n,* 48 Cal App 2d 249; 119 P2d 754 (1941). In that case, the California court held that since the trust under consideration created a valid vested remainder subject to divestment, the fact that a vested interest was created at the time the trust was created dictated that upon the death of the beneficiary the vested remainder passed to his heirs. In this regard it should be noted that MCL 554.35; MSA 26.35 provides:

"Expectant estates are descendible, devisable and alienable, in the same manner as estates in possession."

It is clear in this case that Louise Grout Hill created a vested remainder subject to revocation in Selden B. Daume. An inter vivos trust creates a present interest in property, albeit, as in this case, an expectant interest. Where words of absolute grant are used to create that interest, it must be determined to be a vested interest. The only condition that could defeat Mr. Daume's interest in the Hill trust was revocation by the settlor. Such an interest is, by the weight of authority, and by

statutory authority in this state, MCL 554.35, descendible, devisable and alienable. On the contrary, no present interest in property is created by the execution of a last will and testament. A legatee achieves an interest only upon the death of the testator. Therefore, if the legatee predeceases the testator it is generally held that his interest lapses and reverts to the remainder of the testator's estate, unless he is one of the persons protected by the so-called anti-lapse statute, MCL 702.11. The only authority that could be said to be *contra* to the above conclusion is *In re Estate of Button,* 79 Wash 2d 849; 490 P2d 731 (1971). In that case a Washington court held that the anti-lapse statute in that state preserved for the benefit of the heirs of the trustor's mother their interest in the trustor's estate even though the mother predeceased the trustor. That court stated in dicta:

"Whether or not the interest of [the beneficiary] had vested prior to the death of the trustor, it was subject to be divested if she died before the trustor died, under the rule as it existed prior to the enactment of [the anti-lapse statute]. That statute alone, interpreted to apply to trusts as well as to wills, saves her interest for her heirs." 79 Wash 2d 855.

Thus, the Washington court would have found in this case, that the interest of Mr. Daume lapsed because it was not protected by the anti-lapse statute. This Court is satisfied that it should follow the weight of authority as established in *First National Bank of Cincinnati v Tenney, supra, Smyth v Cleveland Trust Co, supra,* and *Randall v Bank of America National Trust & Savings Ass'n, supra.* The vested remainder of Selden B. Daume did not lapse by reason of his predeceasing Louise Grout Hill and was descendible to his heirs.

Since this Court has held that the disputed language of paragraph III (E) of the Hill Trust constituted an absolute gift to Selden B. Daume, that the presumption of undue influence was overcome by substantial evidence, and that the gift to Selden B. Daume did not lapse, the contentions of the defendants Grout relative to the applicable statute of limitations are rendered moot. Accordingly, the judgment of the trial court is affirmed.