[No. 42028.    En Banc.    November 11, 1971.]

*In the Matter of the Estate of* ROBERT H. BUTTON, *Deceased.*
KERRY BURG *et al., Petitioners,* v. OLD NATIONAL BANK OF
WASHINGTON, *as Administrator, Respondent.*

*Witherspoon, Kelley, Davenport & Toole,* by *John L.
Neff,* for petitioners Burg and Fredric E. Button.

*J. D. McMannis,* for petitioner Stefanie L. Button.

ROSELLINI, J.—This action was instituted by the Old National Bank of Washington, asking the Superior Court for Whitman County to determine its obligations under two sets of trust instruments and the applicable Washington law.

The evidence presented at the hearing of the matter showed that in 1940, Robert H. Button executed a revocable trust, covering certain real property located in Whitman County, retaining a life estate, and naming the Old Na-

tional Bank of Washington as trustee. The trust provided that it could be revoked or modified upon execution of an instrument in writing, duly signed by the trustor and delivered to the trustee, and, in case the trustee's duties were altered, upon its approval of the change. The trust contained the following provision:

> Upon the death of the Trustor without having withdrawn the entire fund, the balance of investments and cash remaining in the trust fund shall be delivered to the Trustor's mother, Audrey A. Burg, and her receipt for the residue of said trust fund shall thereupon release the Trustee from any further responsibility therefor.

There was no provision for the disposition of the trust property in the event the trustor's mother should predecease him.

In February 1964, Button, then living in California, executed and mailed to his Spokane attorney instruments revoking the 1940 trust, setting up a new trust agreement, and conveying the property described in the 1940 trust to the Old National Bank as trustee. This new trust made the trustor's niece, Stefanie Button, a minor, beneficiary of a life estate upon the trustor's death. It also provided that payments should be made to the trustor's wife in the event she should be in want and unmarried. The remainder of the estate was to be paid to Washington State University following the death of Stefanie Button and the trustor's wife.

At the same time that Button mailed these instruments to his attorney, he wrote a letter to the bank, advising it that he had sent the new trust instruments to his attorney and stating: "I think I would really only like that trust to take effect in the event of Mother's death prior to mine."

In his covering letter to his attorney, he said:

> I am enclosing as you see a copy of a letter sent to Luther [Luther Fendler, a trust officer of the Old National Bank] as well as the trust documents. I've wondered if the trust documents should be held in abeyance if my death is apt to precede that of Mothers? As it is now set up she is the sole heir, the only real effect would be that it now deletes Dorothy's name. As you know I have mixed emotions about Dorothy, although all is well

between us as of this moment, but she is off the wagon again and that has always led to TROUBLE.

The evidence showed that Button and his wife had been having marital difficulties when these instruments were drawn and that Button was in very precarious health. It also showed that Stefanie Button was the only living issue of any of the children of Audrey A. Burg.

According to the testimony of Button's Spokane attorney, Button advised him by telephone to "hang onto" the trust documents until "further word from him." He received no further oral or written instructions concerning the trust. In the latter part of 1964, a mortgage was executed by the bank, covering the property then held in trust under the 1940 instruments, and the mortgage instrument, as well as a direction to the bank to execute the mortgage, signed by Button, and an assignment of the trust to secure the mortgage, all referred to the 1940 instrument.

On November 15, 1966, Audrey A. Burg died intestate, and on November 28, 1966, the trustor, Button, died, leaving a will which disposed of his California property but made no mention of his Washington property. Shortly thereafter, the Spokane attorney delivered the 1964 trust instruments to the Old National Bank and this action was instituted. Although she was given notice of the proceedings, the widow of Button did not appear and was not represented at the hearing. The adversaries before the court were the guardian ad litem of Stefanie Button and the heirs of Audrey A. Burg, namely her two sons, Kerry Burg and Fredric E. Button (father of Stefanie).

The trial court found that Button had never manifested an intent to revoke or modify the 1940 trust. It held that the 1940 trust remained in full force and effect, that the gift of the residue to the mother of the trustor lapsed upon her death, and there being no other provision for the disposition of the residue, that it reverted to the estate of the trustor. The court further held that the California will did not dispose of the Washington property of Button, and that

consequently it should pass by the rules of intestate succession of the state of Washington.

The heirs of Audrey A. Burg and the guardian ad litem of Stefanie Button appealed to the Court of Appeals, which held that the gift to Audrey A. Burg had not lapsed, but further held that the trustor had manifested an intent to give "operative effect" to the 1964 trust, at least insofar as it benefited Stefanie Button and Washington State University,[1] while at the same time holding that the 1964 trust was not effective to revoke the 1940 trust.

The heirs of Audrey A. Burg petitioned for review and their petition was granted.

The first question presented is whether the trustor, during his lifetime, manifested an intent to revoke the trust which he had created in 1940 and to substitute a new and different trust. It has not been suggested that the instruments which he executed in 1964 conformed to the requirements of RCW 11.12.020 or could otherwise be given effect as a testamentary disposition.

The rule is that the settlor of a trust has the power to revoke the trust if and to the extent that, by the terms of the trust, he reserved such a power. Restatement (Second) of Trusts § 330 (1959); A. Scott, The Law of Trusts § 330, at 2595 (3d ed. 1967). Where the trust instrument specifies the method of revocation, only that method can be used. Restatement (Second) of Trusts § 330, comment *j* at 139 (1959); A. Scott, The Law of Trusts § 331, at 2618 (3d ed. 1967).

The 1940 trust instrument specified that it could be revoked or modified by an instrument in writing, signed by the trustor and delivered to the trustee. Button signed such instruments but they were never delivered to the trustee. Nor would the record support a finding that he instructed his attorney to deliver those instruments at any time prior to his death. On the contrary, his instructions were to hold

---

[1] Apparently the court was of the opinion that, since the widow did not appear in the action to defend her interest under the trust, she forfeited that interest. Under the view which we take of the applicable law, it is unnecessary to consider the correctness of that opinion.

the 1964 instruments until the attorney should receive further instructions from him. According to that attorney's testimony, no further instructions were ever received.

As far as the record discloses, Button never gave the matter further thought after he told his attorney to hold the documents. He communicated with the attorney a number of times before his death in 1966 but never again mentioned the trust instruments. The fact that he signed mortgage papers in the interim which showed that the 1940 trust was still in effect is further evidence that he had not intended to order delivery of the trust instruments to the trustee at the time he mailed them to his attorney.

We are compelled to hold that the Court of Appeals was in error when it found that Button had manifested an intent that the provisions of the 1964 instruments should have operative effect. On the contrary, the 1940 trust was never revoked and consequently it remained in full force and effect until the death of the trustor.

Were we confronted with a situation in which the trustor had requested his attorney to deliver an executed trust instrument to the trustee, but the attorney had failed to do so before the death of the trustor, a different question would be presented. Upon that question we express no opinion at this time. *See* A. Scott, The Law of Trusts § 32.2, at 270 (3d ed. 1967).

We are thus brought to the question of the proper disposition of the trust property, the only named beneficiary of the 1940 trust (other than the trustor himself) having died prior to the death of the trustor.

It was the rule at common law that a gift in trust lapsed upon the death of the beneficiary prior to the death of the trustor. Restatement (Second) of Trusts § 112, comment *f* at 245 (1959); A. Scott, The Law of Trusts § 112.3 (3d ed. 1967). And in this state, if the named legatee in a will is not a relative by consanguinity, the common law rule that the gift lapses is still in effect. *In re Estate of Smith,* 49 Wn.2d 229, 299 P.2d 550, 63 A.L.R.2d 299 (1956) (where the testator's gift of the residue of his estate to his wife was

held to have lapsed upon her death prior to the testator's), and *In re Estate of Sims*, 39 Wn.2d 288, 235 P.2d 204 (1951) (where a wife's bequest to her husband was held to have lapsed when he failed to survive the testatrix).

However, by the terms of RCW 11.12.110, when an estate is devised or bequeathed to any child, grandchild, or other relative of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants shall take the estate.

The act declares that under the provisions of that section a spouse is not a relative. It does not, however, exclude a parent from the definition of "relative."

Of course, the gift to Audrey A. Burg was not made by will, but by inter vivos trust. If it were made by testamentary trust, we do not think that it could be seriously suggested that this statute was not meant to affect it, and the only difference between such a gift and that involved here is that the inter vivos trust disposes of property upon the death of the settlor without the necessity of complying with the statute of wills. Similar statutes do indeed apply to trusts. Restatement (Second) of Trusts § 112, comment *f* (1959); A. Scott, The Law of Trusts § 112.3, n.3 (3d ed. 1967). Courts in other jurisdictions which have considered the question also have held that similar statutes apply to beneficiaries of testamentary trusts. *See* Annot., *Statute to prevent lapse in event of death of devisee or legatee before testator as applicable to interest of beneficiary under trust who dies before testator,* 118 A.L.R. 559 (1939).

A gift to be enjoyed only upon or after the death of the donor is in practical effect a legacy, whether it is created in an inter vivos instrument or in a will. RCW 11.12.110 declares the policy of the law of this state, and that policy is against the lapsing of gifts to relatives of the deceased. This does not mean that a testator or trustor cannot provide for a different disposition. If he does, of course, the statute has no application.

Where a statute (RCW 11.12.180) applied by its terms to devises of real estate, we held that it declared the policy

of the state applicable to a trust covering personal property as well. *Abbott v. Everett Trust & Savings Bank,* 50 Wn.2d 398, 312 P.2d 203 (1957). By the same principle, there being no conflicting statutory provision, a statute covering gifts by will which would lapse in the absence of the statute, applies to gifts provided in a trust.

We conclude that the gift to Audrey A. Burg did not lapse, and that the trustee holds the residue for her descendants.

The Court of Appeals reached the same result on this question, but based its conclusion upon a rationale that the gift to Audrey A. Burg had vested. We do not examine the propriety of the conclusion that her interest had vested, since we are of the opinion that that conclusion does not answer the question whether that interest was intended to pass to her heirs upon her death. The case cited in support of the rationale was *Seattle-First Nat'l Bank v. Crosby,* 42 Wn.2d 234, 254 P.2d 732 (1953). There the trust instrument provided that if the principal beneficiary should die before attaining the age of 35, the trustee should distribute his share to his heirs at law. Since the trustor expressly provided for the disposition of the named beneficiary's share in the event of his death, no question of lapse was involved in the case.

Whether or not the interest of Audrey A. Burg had vested prior to the death of the trustor, it was subject to be divested if she died before the trustor died, under the rule as it existed prior to the enactment of RCW 11.12.110. That statute alone, interpreted to apply to trusts as well as to wills, saves her interest for her heirs.

The judgment of the Court of Appeals is reversed in part and the cause is remanded to the Superior Court for Whitman County with directions to enter an order in conformity with the views expressed herein.

HAMILTON, C.J., FINLEY, HUNTER, HALE, STAFFORD, and SHARP, JJ., and OTT, J. Pro Tem., concur.