FIRST NATIONAL BANK OF
BAR HARBOR

v.

Peter B. ANTHONY, et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Sept. 6, 1988.
Decided April 25, 1989.

Norman Shaw, Bar Harbor, for plaintiff.

Edward J. McSweeney, III, Ferm & McSweeney, Wayne P. Libhart, Bronson Platner, Ellsworth, for defendants.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and HORNBY, JJ.

ROBERTS, Justice.

The children of John M. Anthony, Deborah Alley and Christopher Anthony Perasco, appeal from a summary judgment of the Superior Court, Hancock County (*Smith, J.*), that denied their claim to a remainder interest in an *inter vivos* trust created by their now deceased grandfather, J. Franklin Anthony. The court determined that the gift to John M. Anthony, a child of the settlor, of the remainder interest lapsed as a result of John M. Anthony's death prior to the death of the settlor. Because we hold that the remainder interest of John M. Anthony was a present, vested interest at the time of the creation of the *inter vivos* trust, we vacate the judgment.

## FACTS

On May 14, 1975, J. Franklin Anthony, of Bar Harbor, established a revocable *inter vivos* trust with the First National Bank of Bar Harbor. The income was payable to the settlor for life, then to his widow, Ethel L. Anthony, should she survive him. Upon the death of both J. Franklin and Ethel L. Anthony, the corpus would be divided "in equal shares to [the settlor's] children, John M. Anthony, Peter B. Anthony and Dencie S. Tripp [now Fenno] free and clear of any trust."

Ethel Anthony predeceased her husband on November 22, 1982. On September 9, 1983, John M. Anthony died unmarried, leaving three children: Deborah Alley, Christopher Anthony Perasco and Paul Anthony.

J. Franklin Anthony died on April 2, 1984. On April 10, 1984, his will was admitted to Probate by the Hancock County Probate Court. The will left two-thirds of his estate to Peter B. Anthony and one-third to Dencie S. Fenno; the heirs of John M. Anthony were expressly omitted from the will.

## PROCEDURE

The First National Bank of Bar Harbor, in its capacity as trustee, filed a complaint in the Superior Court requesting construction of the Anthony Trust. The children of

John M. Anthony, grandchildren of the settlor, filed a motion for summary judgment. The grandchildren asserted that John M. Anthony's interest in the trust was vested, not contingent, at the time of its creation. John M.'s heirs, therefore, were entitled to his one-third interest in the trust.

The motion was opposed by Dencie S. Fenno and Peter B. Anthony, at that time arguing that the terms of the trust were ambiguous and that extrinsic evidence should be permitted to determine the intent of the settlor. Their memorandum was accompanied by two affidavits stating that affiant's understanding that the deceased settlor wished the children of John M. Anthony to receive nothing from the settlor's estate. In granting summary judgment against the movants, the court (1) declined to consider extrinsic evidence on the ground that the language of the trust was unambiguous, (2) determined that the gift of the remainder to named individuals "in equal shares" was a gift to the individuals and not to a class, (3) held that the gift to John M. Anthony lapsed because his interest did not vest until the death of the survivor of the settlor and his wife, and (4) declined to apply the Anti–Lapse Statute, 18–A M.R.S.A. § 2–605 (Supp.1988), because the statute applies only to testamentary gifts. The court therefore directed the trustee to pay over the lapsed gift to John M. Anthony to the personal representative of the deceased settlor. This appeal followed.

## DISCUSSION

Before us all parties now agree that the terms of the trust are unambiguous and that a summary judgment is appropriate. Moreover, all parties agree that the gift of the remainder interest "in equal shares" to the named children of the settlor was a gift to the individuals and not to a class. As a result, we need address only the court's holding that the gift to John M. Anthony lapsed upon his death prior to the death of the settlor.

The parties rely almost exclusively on our prior cases dealing with testamentary dispositions. These cases are of little as-

sistance on the issue before us. Because a will is not operative until the death of the testator, an interest in a testamentary trust cannot vest prior to that event. On the other hand, an *inter vivos* trust is operative from the date of its creation. We must determine the settlor's intent as expressed in the trust instrument by examining the settlor's overall plan of disposition.

We note the following: (1) the settlor explicitly retained the right to change his beneficiaries if he wanted to alter the trust's disposition; (2) the settlor imposed no restrictions on what his children could do with their respective shares; (3) aside from his power to revoke or amend the trust, the settlor specifically limited his own benefit to income during his lifetime and payment of certain expenses associated with his death; (4) the settlor made survival an explicit condition of any benefit to his wife, but did not include such language in the case of his children. The unexercised right to make a change in beneficiaries, the absence of any control over how the children might dispose of their shares, and the overall assignment of economic benefits lead us to conclude that this plan of disposition effectively eliminated any further interest of the settlor in the trust principal unless he affirmatively chose to intervene. His failure to change the plan coupled with the omission of a survival requirement in the case of the children's shares, suggests a disposition to a predeceased child's estate rather than a reversion to the settlor's estate. As a result of this construction of the instrument, it may be said that the children's interests were vested, subject to defeasance or divestment if the settlor chose to amend or revoke the trust or change his beneficiaries.

We next address the question whether the settlor's reservation of the power of amendment or revocation should alter our conclusion that the children's interests vested. Substantial case law from other jurisdictions persuades us that it should not. A leading case decided by the Ohio Supreme Court holds that an *inter vivos* trust reserving to the settlor the income for life plus the power to revoke, with a remainder over at the death of the settlor, creates a vested interest in the remainderman subject to defeasance by the exercise of the power of revocation. *First National Bank v. Tenney*, 165 Ohio St. 513, 138 N.E.2d 15 (1956).

Similarly, an Illinois appellate court, reversing the trial court, held that a delay in enjoyment of possession does not imply a requirement of survival by the remainderman before the remainder is vested. *First Galesburg National Bank & Trust Co. v. Robinson*, 149 Ill.App.3d 584, 102 Ill.Dec. 894, 500 N.E.2d 995 (1986). The court concluded that the words "at the death of" do not refer to the time when the remainder vested, but rather to the time when the remainderman was entitled to possession. *Id.* 102 Ill.Dec. at 895, 500 N.E.2d at 996. The sons of the settlors, therefore, took a present right to the remainder upon execution of the trust instrument, although enjoyment was postponed until the termination of the life estates. *Id.* 102 Ill.Dec. at 895–96, 500 N.E.2d at 996–97.

Even when the settlor said "on [the settlor's] death the remainder shall vest," the *inter vivos* trust has been held to create a present interest subject to divestment by amendment or revocation. *Randall v. Bank of America N.T. & S.A.*, 48 Cal. App.2d 249, 119 P.2d 754 (1941). An Indiana court has stated that the language of Restatement (Second) of Trusts § 112(f) that a person dying prior to the creation of a trust cannot be a beneficiary of that trust is inapplicable to persons living at the time of the creation of an *inter vivos* trust. *Hinds v. McNair*, 413 N.E.2d 586 (Ind.App. 1980). *See Detroit Bank & Trust Co. v. Grout*, 95 Mich.App. 253, 289 N.W.2d 898 (1980); *Matter of Estate of Vondermuhll*, 156 N.J.Super. 531, 384 A.2d 185 (1978); *In re Trust of Pew*, 452 Pa. 509, 307 A.2d 273 (1973). *Contra, In re Estate of Button*, 79 Wash.2d 849, 490 P.2d 731 (1971) (applying an anti-lapse statute) (criticized in Annotation, *Anti–Lapse Statute as Applicable to Interest of Beneficiary under Inter Vivos Trust who Predeceases Life–Tenant Settlor*, 47 A.L.R.3d 358 (1973)). *See also* Bogert, *Trust and Trustees* § 182, at 394

(1979) ("[if] no requirement of survival is attached to the gift, the beneficiary may take a vested estate.")

The trust instrument before us contains no requirement that the remainder beneficiaries survive the life tenants and we see no reason to imply a requirement of survival. Only the settlor's subsequent revocation or substitution would divest the remainder interest. Evidence presented by affidavit of the settlor's desire to revoke the contingent remainder and disinherit his son and son's heirs is simply not relevant. Although the settlor's intention is critical in interpreting the terms of a trust, that intention must be ascertained by analyzing the trust instrument. *Mooney v. Northeast Bank & Trust Co.*, 377 A.2d 120, 122 (Me.1977). Only when the instrument is ambiguous can a court consider extrinsic evidence. *Id.* at 122.

Because John M. Anthony's interest vested at the time of the creation of the trust, we do not consider whether Maine's antilapse statute, 18–A M.R.S.A. § 2–605, could apply to an *inter vivos* trust.

The entry is:

Judgment vacated.

Remanded for determination of the appropriate instruction to the Trustee in accordance with the opinion herein.

Costs to be taxed against the trust estate.

All concurring.