This case arises from a dispute concerning the estate of Claude H. Baldwin, Jr. ("Claude"). Julia Baldwin, Claude's widow, appeals from the trial court's summary judgment dismissing an action in which Julia sought a declaration of what assets were in the Claude H. Baldwin, Jr., Revocable Trust of September 3, 1992 ("the Baldwin Trust") at the time of Claude's death. We hold that the summary judgment in Julia's declaratory-judgment action was inappropriate because there are genuine issues of material fact as to the validity of the trust and as to what assets were in the trust at the time of Claude's death.
On September 3, 1992, Claude executed a declaration of trust creating a revocable trust. He appointed himself trustee. The declaration of trust stated that upon Claude's death or incapacity, O.W. Irwin would succeed him as trustee. The declaration of trust stated that Claude conveyed into the trust those assets enumerated in "Schedule A" attached to the declaration of trust. The declaration of trust provided that all net trust income was to be paid to Claude as beneficiary during Claude's lifetime, that Claude retained the right to remove assets from the trust, and that the successor trustee was to make certain bequests from the trust to other beneficiaries following Claude's death. On May 27, 1993, Claude executed a will. Claude amended neither the declaration of trust nor his will before his death on January 4, 2001.
On December 9, 1996, Claude H. Baldwin III, Claude's son, petitioned the probate court of Shelby County to appoint a conservator for his father's estate, alleging that his father was incompetent. On February 15, 1997, Claude married Julia Watson. On April 23, 1997, the probate court appointed Claude's son as conservator for Claude's estate. The court amended the conservatorship order on May 14, 1997, and appointed James M. Tingle as Claude's conservator ("the conservator"), and ordered the conservator to file with the probate court an inventory of Claude's estate.
On July 21, 1997, the conservator filed an initial inventory of Claude's estate. On July 17, 2000, the conservator filed a partial settlement of Claude's estate. The conservator stated in an affidavit filed in support of Julia's opposition to the motion for a summary judgment in this case that he was aware that O.W. Irwin was appointed *Page 1140 
to serve as the successor trustee of the Baldwin Trust if Claude became incapacitated; nevertheless, the conservator did not consult with Irwin about the trust during Claude's lifetime, and the conservator managed all of Claude's financial affairs until Claude's death on January 4, 2001.
On February 6, 2001, Irwin petitioned to probate Claude's will. On February 12, 2001, Julia filed an action in the circuit court seeking a judgment declaring what assets were in Claude's estate and what assets were in the Baldwin Trust. On March 13, 2001, the conservator filed in the probate court a final settlement of his conservatorship.
On March 16, 2001, Claude's son filed an answer and a cross- complaint in Julia's declaratory-judgment action. In the answer, Claude's son denied Julia's claims that no assets remained in the trust at Claude's death and argued that before his death Claude had properly conveyed all of his property into the Baldwin Trust and that at the time of Claude's death all of Claude's property was in the Baldwin Trust.
On April 5, 2001, the administration of Claude's estate was removed to the circuit court and consolidated with Julia's declaratory-judgment action. Julia filed a motion in the circuit court to take her elective share of Claude's estate. On May 31, 2001, Irwin, as the successor trustee of the Baldwin Trust, acknowledged receipt of Claude's property from the conservator. Claude's son moved for a summary judgment, and the trial court entered a summary judgment both upholding the validity of the Baldwin Trust and finding that all of the disputed assets remained in the trust. Julia appeals.
This Court reviews a summary judgment de novo. We apply the same standard as the trial court to determine whether the evidence made out a genuine issue of material fact, see Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988), and whether the movant was "entitled to a judgment as a matter of law." Rule 56(c), Ala.R.Civ.P.; Wright v.Wright, 654 So.2d 542 (Ala. 1995).
 "`When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Wright[v. Wright], 654 So.2d [542] at 543 [(Ala. 1995)](quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359
(Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990).'"
Walker v. City of Montgomery, 833 So.2d 40, 43 (Ala. 2002) (quotingHobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997)). When considering the validity of a trust, this Court has held:
 "There is no trust unless an intention to create one is manifested. Restatement (Second) of Trusts § 23 (1959). The question of whether the intention has been manifested is a question of fact to be determined by the trier of facts in light of the evidence. The burden of proof is on the party seeking to establish the existence of the trust and that burden *Page 1141 
is to present clear and definite evidence, without reasonable doubt as to the existence of the trust."
Osborn v. Empire Life Ins. Co. of America, 342 So.2d 763, 765 (Ala. 1977).
 "This court has held that no particular form of words in a trust instrument is required to create a trust, but any instrument in writing signed by the parties, or party, at the time of the trust's creation, or subsequently, will suffice if the nature, subject matter, and objects of the trust are manifested with reasonable certainty by the instrument. . . . The basic criterion is whether the settlor intended to create a trust."
First Alabama Bank of Tuscaloosa, N.A. v. Webb, 373 So.2d 631, 638
(Ala. 1979). "[A] settlor may retain the right to revoke, modify, or alter a trust." Coosa River Water, Sewer Fire Protection Auth. v.SouthTrust Bank of Alabama, N.A., 611 So.2d 1058, 1061 (Ala. 1993).
However,
 "'[w]here the powers retained by the settlor amount, in cumulative effect, to ownership of the trust estate, with such control over the administrative functions of the trustee as to make of him simply the settlor's representative, no valid trust is established. Similarly, while a trust instrument may purport to name a beneficiary, if the settlor reserves a substantial interest or unbridled control over management of the operations that is not for the benefit of the purported beneficiary, the trust may be found to be illusory.'"
Coosa River, 611 So.2d at 1062 (quoting 76 Am. Jur.2d Trusts § 29 (1992)).
Julia argues that the Baldwin Trust was illusory because, she says, Claude and the conservator both ignored the declaration of trust and commingled trust assets and Claude's personal assets. Julia argues in the alternative that even if the declaration of trust created a valid trust, there is a factual question as to what assets validly remained in the trust at the time of Claude's death.[1] Claude's son argues that the Baldwin Trust is not illusory and is a valid trust, that commingling of assets does not defeat the trust, that the conservator's accountings properly account for all of Claude's assets, and that the conservator properly carried out his duties under § 26-2A-155, Ala. Code 1975, to consider Claude's estate plan, which included the Baldwin Trust and Claude's will, in administering Claude's estate.
The order of the Shelby County Probate Court dated May 14, 1997, instructed the conservator to file with the court a complete inventory of the estate under conservatorship. Property properly conveyed to a trust, even a revocable trust, is not part of the settlor's "estate." SeeRussell v. Russell, 758 So.2d 533, 538-39 (Ala. 1999). On July 21, 1997, James M. Tingle, as the conservator of Claude's estate, filed an inventory of the estate with the probate court; that inventory purported *Page 1142 
to list "all of the person's property, separately enumerated . . . [and] such other property of the person as is required to be reported in accordance with applicable law." The assets shown on the conservator's inventory of Claude's estate overlap in part the assets described in Schedule A to the declaration of trust.
The conservator's inventory and Schedule A, however, are not identical. For example, the conservator's inventory does not include a coin collection and camera equipment as part of Claude's personal property; both a coin collection and camera equipment are specifically listed on Schedule A. The conservator's inventory does not mention a 1991 Saturn automobile; Schedule A lists a 1991 Saturn automobile among those assets conveyed to the Baldwin Trust. The conservator's inventory does not include a "special ordinary endowment, State Farm Insurance" policy as being among Claude's personal assets; Schedule A lists such a policy as having been conveyed to the Baldwin Trust. The conservator's inventory, however, does list as property of the estate a checking account, an individual retirement account, and some other investment accounts that were also listed on Schedule A as being included in the Baldwin Trust.
The fact that some items listed on Schedule A later also appear in the conservator's inventory of Claude's estate, but that not all of the items listed on Schedule A appear in the inventory, suggests that the conservator may have erred in describing the content's of Claude's estate and may have included trust property with estate property, or that property may have been moved in and out of the trust between the time Claude executed the declaration of trust and the time the conservator inventoried the estate. For instance, the securities accounts may have been removed from the trust, but the coin collection and the State Farm insurance policy may have remained in the trust. Finally, the discrepancy may mean that Claude never intended to convey to the trust the property listed by the conservator as being in the estate. The state of the record before this Court, however, does not allow us to determine any of these matters with any certainty.
Julia's affidavit states that Claude treated trust property as his personal property and ignored the trust. In his affidavit, the conservator states that he was aware "that Mr. Baldwin had previously conveyed some of his assets into his name as Trustee." The conservator states: "At no time did I request Mr. Irwin to assume the duties of Trustee, nor become involved with the trust assets, even though I knew Judge Furhmeister [Shelby County probate judge] had found Mr. Baldwin incapable of handling his financial affairs." Finally, the conservator states that after Claude's death he transferred any personal or trust assets under his control to Irwin, the successor trustee of the Baldwin Trust, but "made no attempt to differentiate for [Irwin] what amount of the checking account funds were personal funds (i.e., estate funds) and what amount, if any, were net trust funds as it would have been virtually impossible to do so by that time."
From these facts, this Court cannot conclude whether Claude exercised control as trustee for "the benefit of the purported beneficiar[ies]" of the Baldwin Trust, or whether Claude simply ignored the trust and exercised the sort of unbridled control that would make the trust illusory. Coosa River, 611 So.2d at 1062.[2] There are genuine *Page 1143 
issues of material fact as to (1) whether the Baldwin Trust was illusory, (2) whether Claude had conveyed to the Baldwin Trust any of the property described on the conservator's inventory of Claude's estate, (3) whether Claude had removed from the Baldwin Trust the property listed on the conservator's inventory of Claude's estate that was also listed on Schedule A as having been conveyed to the Baldwin Trust, (4) whether the conservator had erred when he enumerated the property that belonged to Claude's estate as belonging to the estate and not being an asset of the Baldwin Trust, and (5) whether the conservator's enumeration of the property that belonged to Claude's estate constituted the conservator's exercise of his power of "revocation or withdrawal . . . exercisable by the conservator or the court," § 26-2A-155, Ala. Code 1975, to remove the property from the Baldwin Trust for Claude's support and to give effect to Claude's estate plan.[3]
Therefore, we reverse the trial court's summary judgment in favor of the estate in Julia's declaratory-judgment action, and we remand the case for proceedings consistent with this opinion.
REVERSED AND REMANDED.
MOORE, C.J., and HOUSTON, BROWN, HARWOOD, and STUART, JJ., concur.
[1] This case came before this Court with a companion case, Claude H.Baldwin III v. Miles Branch and Suzanne B. Ligon (No. 1011214) (currently on the Court's administrative docket pending the resolution of this case on remand). At oral argument in Baldwin v. Branch, Justice Houston questioned whether Claude had ever validly conveyed assets into the trust. Justice Houston noted that the document that purports to witness the conveyance of assets into the trust reads:
 "I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Claude H. Baldwin, III, whose name is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day, that, being informed of the contents of the conveyance is executed the same voluntarily on the day the same bears date."
The Baldwin Trust was created by Claude H. Baldwin, Jr., not Claude H. Baldwin III.
[2] In Argo v. Moncus, 721 So.2d 218, 221 (Ala.Civ.App. 1998), the Court of Civil Appeals found a declaration of trust in which the settlor was named as trustee to be valid because the record indicated the settlor, acting as trustee, had managed the trust for the benefit of the beneficiaries of the trust.
[3] Claude's son argues that "a conservator is charged with taking into account his ward's estate planning, including any will or revocable trust executed by the ward." (Joint Brief of Appellees at 29.) Article 1.02 of the declaration of trust states that Claude was entitled to remove principal from the trust at any time by indicating in writing his intent to do so. Claude's son argues that the conservator was entitled to make decisions about Claude's estate, but the record does not allow us to know whether the conservator's list of assets belonging to the estate was produced by taking into account Claude's estate plan.