888 So.2d 482 (2004)
Claude H. BALDWIN III
v.
Miles BRANCH and Suzanne B. Ligon.
1011214.
Supreme Court of Alabama.
March 5, 2004.
Harry Markstein and Daniel H. Markstein III of Maynard, Cooper & Gale, P.C., Birmingham, for appellant.
J. Frank Head of Wallace, Ellis, Fowler & Head, Columbiana, for appellees.
Bruce F. Rogers and James W. Davis of Bainbridge, Mims, Rogers & Smith, LLP, *483 Birmingham, for amicus curiae Gloria Cobb, in support of the appellees.
SEE, Justice.
This case involves a dispute as to whether a disposition in a trust created by Claude H. Baldwin, Jr. ("Claude"), lapsed when the grantee died. The trial court entered a summary judgment holding that the disposition made in the Claude H. Baldwin, Jr., Revocable Trust ("the Baldwin Trust") to Claude's sister, Bernice B. Branch, did not lapse on Bernice's death. Claude H. Baldwin III ("Claude's son"), appeals. We affirm.
On September 2, 1992, Claude executed a declaration of trust creating a revocable trust. He appointed himself trustee. The declaration of trust stated that upon Claude's death or incapacity, O.W. Irwin would succeed him as trustee, that all net trust income was to be paid to Claude during Claude's lifetime, that Claude retained the right to remove assets from the trust, and that following Claude's death the successor trustee was to make certain dispositions from the trust, including one to his sister Bernice.
Bernice predeceased Claude, leaving two children, Miles Branch and Suzanne B. Ligon. Claude died testate on January 4, 2001; the trust had never been amended. On March 13, 2001, the conservator of Claude's estate filed in the probate court a final settlement of his conservatorship.[1]
On February 12, 2001, Claude's widow, Julia Watson Baldwin, filed an action in the Shelby Circuit Court seeking a judgment declaring what assets were in Claude's estate and what assets, if any, were in the Baldwin Trust. On March 16, 2001, Claude's son filed an answer and a cross-complaint in Julia's declaratory-judgment action.[2] The cross-complaint filed by Claude's son is the subject of this appeal. Claude's son argued in his cross-complaint that the distribution to be made to Bernice from the Baldwin Trust had lapsed upon Bernice's death. Bernice's children, Miles Branch ("Branch") and Suzanne B. Ligon ("Ligon"), filed an answer to the cross-complaint in which they argued that as Bernice's children they are entitled to her share of the Baldwin Trust. Claude's son and Branch and Ligon moved for a summary judgment. Branch and Ligon attached to their motion an affidavit by the attorney who drafted the Baldwin Trust and Claude's will; the affidavit stated that Claude had intended Bernice's children to take under the trust in the event Bernice predeceased him. Claude's son moved the trial court to strike the affidavit on the ground that the Baldwin Trust was not ambiguous and therefore parol evidence was not necessary to its interpretation; the trial court granted the motion, and on February 1, 2002, entered a summary *484 judgment in favor of Branch and Ligon upholding their claim to Bernice's share of the Baldwin Trust.
Claude's son appeals. He states the issue on appeal as whether "a provision for a beneficiary in a revocable trust lapses if the beneficiary predeceases the settlor, for whose lifetime benefit the trust income and principal are reserved, and the trust makes no provision for the contingency." (Appellant's brief, p. 4.) Specifically, Claude's son argues that Alabama's antilapse statute, which is applicable to wills, does not apply to trusts and that a gift in a revocable trust in which the settlor is also the trustee does not vest in the beneficiary upon the creation of the trust.
We review a trial court's summary judgment de novo, giving the judgment no presumption of correctness. Nationwide Ins. Co. v. Rhodes, 870 So.2d 695 (Ala.2003). When a document is unambiguous, its construction and legal effect are questions of law for the court to decide. Wheeler v. First Alabama Bank of Birmingham, 364 So.2d 1190 (Ala.1978).[3]
Claude's son argues that the provision in the Alabama Probate Code that prevents a lapse in a will, § 43-8-224, Ala.Code 1975, does not apply to revocable trusts. The issue whether a gift in a trust may lapse has not previously been addressed by an Alabama court. While § 43-8-224, Ala.Code 1975, operates, in the case of a will, to prevent a lapse when a devisee dies before the testator, there is no similar statutory provision to prevent a lapse of a gift made in a revocable trust.
Section 43-8-224 reads:
"If a devisee who is a grandparent or a lineal descendant of a grandparent of the testator is dead at the time of execution of the will, fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee who survive the testator by five days take in place of the deceased devisee and if they are all of the same degree of kinship to the devisee they take equally, but if of unequal degree then those of more remote degree take by representation. One who would have been a devisee under a class gift if he had survived the testator is treated as a devisee for purposes of this section whether his death occurred before or after the execution of the will."
Section 43-8-224 mentions only wills, not trusts. Therefore the plain language of § 43-8-224 indicates that it does not apply to trusts.
Claude's son argues that before the enactment of the antilapse statute, Alabama followed the common-law rule that bequests in wills lapse when the legatee or devisee predeceases the testator. See, e.g., Morgan County Bank v. Nelson, 244 Ala. 374, 13 So.2d 765 (1943); First Nat'l Bank v. Hartwell, 232 Ala. 413, 168 So. 446 (1936); and Little v. Ennis, 207 Ala. 111, 92 So. 167 (1922). Claude's son also notes that" `[i]t was the rule at common law that a gift in trust lapsed upon the death of the beneficiary prior to the death of the trustor'" (quoting In re Estate of Button, 79 Wash.2d 849, 853, 490 P.2d 731, 734 (1971)). In Alabama, "[s]tatutes in derogation or modification of the common law are strictly construed. Cook v. Meyer, 73 Ala. 580 (1883). Such statutes are presumed not to alter the common law in any way not expressly declared. Pappas v. City of Eufaula, 282 Ala. 242, 210 So.2d *485 802 (1968)." Arnold v. State 353 So.2d 524, 526 (Ala.1977). Therefore, absent an express statutory provision creating an antilapse rule for revocable trusts, no such rule exists, and Alabama continues to follow the common-law rule that gifts in trust lapse if the beneficiary predeceases the settlor.
Branch and Ligon argue that the antilapse statute should be applied to determining who takes under the Baldwin Trust. They point out that Ohio, Washington, and Virginia have held that similar statutes in those states also apply to trusts, and they cite cases from those jurisdictions in which courts have found that an antilapse statute, on its face applicable only to wills, reaches trusts as well. See Dollar Sav. & Trust Co. of Youngstown v. Turner, 39 Ohio St.3d 182, 529 N.E.2d 1261 (1988)(holding that Ohio's antilapse statute, which specifically refers only to wills, applies to trusts); In re Estate of Button, supra (applying Washington's antilapse statute to a revocable inter vivos trust); and Hester v. Sammons, 171 Va. 142, 198 S.E. 466 (1938)(applying Virginia's antilapse statute to a testamentary trust).
Claude's son states that those cases do not provide reliable authority for this Court to hold that Alabama's anti-lapse statute reaches trusts. He notes that after the Ohio court handed down its decision in Dollar Savings & Trust, holding that Ohio's antilapse statute applied to trusts, the Ohio Legislature amended its antilapse statute to provide that the statute refers only to "wills" and that "will does not include inter vivos trusts or other instruments that have not been admitted to probate." Ohio Rev.Code Ann. § 2107.01. See also Ohio Rev.Code Ann. § 2107.52. The annotation to §§ 2107.01 and 2107.52 reads:
"In amending sections 2107.01 and 2107.52 of the Revised Code, the General Assembly hereby declares its intent to supersede the effect of the holding of the Ohio Supreme Court on October 26, 1988, in Dollar Savings & Trust Co. of Youngstown v. Turner (1988), 39 Ohio St.3d 182, 529 N.E.2d 1261."
When the Supreme Court of Washington held in Estate of Button that Washington's antilapse statute applied also to trusts, that Legislature responded by amending its antilapse statute expressly to add the word "trusts." In both cases, both state legislatures indicated by legislative amendment that the language of the statute did not comport with their courts' reading of the statute.
Claude's son also argues that Hester v. Sammons does not provide persuasive authority because Virginia's antilapse statute "covers every property of every kind which the decedent might have." 171 Va. at 146, 198 S.E. at 467. Therefore, Claude's son concludes, Virginia's statute by its plain wording covers trusts as well as wills.
This Court has previously expressed a reluctance to rewrite the Alabama Probate Code to accommodate the use of a revocable trust as a substitute for a will. In Russell v. Russell, 758 So.2d 533, 538 (Ala.1999), this Court refused to read into the Alabama Probate Code the "augmented estate concept" rejected by the Legislature in 1982 when it reenacted the Probate Code. To hold that Alabama's antilapse statute applies to trusts, this Court would have to invade the Legislature's power to amend statutes. We are not willing to do so; therefore, Branch and Ligon's argument that Alabama's antilapse statute applies to trusts fails.
Claude's son also argues that the Baldwin Trust is a special subspecies of trust  a revocable trust of which the settlor is also the trustee. Claude's son urges *486 this Court to reject Branch and Ligon's contention that Bernice's share in the trust vested when Claude created the trust. He argues that the cases cited by Branch and Ligon do not apply to revocable trusts. Claude's son points out that Article VI of the Baldwin Trust denies a beneficiary any right of alienation prior to the actual distribution of the proceeds of the trust to the beneficiary.[4] He also notes that, in Article III, Claude retained for himself the right to revoke or to amend the Baldwin Trust, and that, in Article I, Claude retained the net income plus the unlimited power to invade the principal. Claude's son argues that the trust instrument divested Claude of nothing.
Claude's son argues that the type of revocable trust created by Claude was conceived as a means to escape probate while retaining all benefits of ownership of the trust assets until the settlor's death. In support of this argument, Claude's son calls our attention to Russell v. Russell, 758 So.2d at 538, which held that the assets Mr. Russell conveyed to himself as trustee before his death were not subject to probate, and, specifically, that Mr. Russell's wife was not entitled to those assets in claiming her elective share.[5]
Branch and Ligon argue that appellate courts of other jurisdictions have held that a gift in a trust to a designated beneficiary vests when the trust is created. Branch and Ligon cite First National Bank of Bar Harbor v. Anthony, 557 A.2d 957 (Me.1989); Detroit Bank & Trust Co. v. Grout, 95 Mich.App. 253, 289 N.W.2d 898 (1980); First Galesburg National Bank & Trust Co. v. Robinson, 149 Ill.App.3d 584, 500 N.E.2d 995, 102 Ill.Dec. 894 (1986); Hinds v. McNair, 413 N.E.2d 586 (Ind.Ct.App.1980); First National Bank of Cincinnati v. Tenney, 165 Ohio St. 513, 138 N.E.2d 15 (1956); and Randall v. Bank of America National Trust & Savings Ass'n, 48 Cal.App.2d 249, 119 P.2d 754 (1941), in support of the proposition that the beneficiary's interest vests at the time the settlor creates the trust, even if the trust is a revocable trust.
*487 For example, in First National Bank of Bar Harbor v. Anthony, supra, the court stated that "the settlor imposed no restrictions on what his children could do with their respective shares." The court concluded:
"The unexercised right to make a change in beneficiaries, the absence of any control over how the children might dispose of their shares, and the overall assignment of economic benefits lead us to conclude that this plan of disposition effectively eliminated any further interest of the settlor in the trust principal unless he affirmatively chose to intervene."
557 A.2d at 959. The court then held that although the child predeceased the father who had created the trust, the child's estate would take as its share the child's share in the trust, because the child's interest vested when the trust was created.
In First Galesburg National Bank & Trust Co. v. Robinson, supra, the Illinois appellate court held that the interest in the trust had vested and stated the general rule for vesting of a remainder:
"`[W]henever the person who is to succeed to the estate in remainder is in being and is ascertained, and the event which by express limitation will terminate the preceding estate is certain to happen, the remainder is vested.' ... [T]he words such as `at death,' `after death,' or `upon death' in the devise of a remainder do not refer to the time when the remainder is to vest in interest but rather to the time when the remaindermen are to take possession."
149 Ill.App.3d at 586, 500 N.E.2d at 996, 102 Ill.Dec. at 895.
Branch and Ligon also cite Uniform Probate Code § 2-707(b) (10 ed.1991 rev.), which provides:
"If a beneficiary of a future interest under the terms of a trust fails to survive the distribution date, the following apply:
"(1) Except as provided in paragraph (4), if the future interest is not in the form of a class gift and the deceased beneficiary leaves surviving descendants, a substitute gift is created in the beneficiary's surviving descendants."
In Jolly v. Hobbs 80 Ala. 213, 218 (1885), this Court stated: "The earliest vesting of the remainder is favored by the law, as it prevents its liability to destruction by the immediate tenant; and when in doubt, it will be held to be vested, rather than contingent."
In Allen v. Maxwell, 249 Ala. 655, 660, 32 So.2d 699, 703 (1947), this Court stated:
"A remainder is said to be vested when the estate passes out of the grantor at the creation of the particular estate, and vests in the grantee during its continuance, or eo instanti that it determines, when a present interest passes to a certain and definite person, to be enjoyed in futuro, and is said to be contingent when the estate is limited either to a dubious and uncertain person, or upon the happening of a dubious or uncertain event,  uncertainty of the right of enjoyment, as distinguished from the uncertainty of possession."
(Quoting George v. Widemire, 242 Ala. 579, 585, 7 So.2d 269, 272 (1942).)
"`Whether a remainder is vested or contingent depends on the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainder-man, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is vested.'"
*488 Brugh v. White, 267 Ala. 575, 580, 103 So.2d 800, 804 (1957), quoting J. Gray, The Rule Against Perpetuities § 108 (4th ed.1942).
The "Declaration of Trust" portion of the Baldwin Trust states:
"I Claude Baldwin, Jr., of Alabama, hereby transfer the property described in Schedule A attached hereto to Claude H. Baldwin, Jr. (`Trustee'), of Pelham, Alabama, in trust to hold such securities and all substitutions therefor and additions thereto for my benefit during my lifetime, and thereafter for the benefit of others as follows...."
Claude then specifically identifies his beneficiaries by name and address, including Bernice B. Branch, the mother of Branch and Ligon.
Section 2.01 of the Baldwin Trust states:
"On my death, the Trustee shall distribute the items of Trust Estate absolutely, as follows: ... The Trustee shall divide all the rest, residue, and remainder of the Trust Estate into three equal shares and shall distribute those shares, equally and absolutely, to Claude H. Baldwin III, Bernice Branch, and Gloria Cobb.
"This section is subject to the provisions of Section 2 in the event any beneficiary should then be a minor or become incapacitated."
Claude did not make a class gift; the designated remaindermen are ascertainable from the Baldwin Trust. Moreover, at the time of the creation of the Baldwin Trust the event that terminates Claude's preceding interest, that is, Claude's death, was certain to happen. Moreover, Bernice's interest was not contingent upon her surviving Claude. Therefore, Bernice retained a vested remainder interest in the Baldwin Trust; she was entitled to take possession of that interest at Claude's death. Because the interest was vested, Bernice's estate was entitled to her share of the trust upon Claude's death. Article III, the revocation and amendment provision of the Baldwin Trust, and Article VI, the spendthrift provision, do not affect the vesting of Bernice's interest; rather, they affect when and whether she will actually take possession of the vested interest upon Claude's death. See Brugh, 267 Ala. at 580, 103 So.2d at 804 (interpreting Braley v. Spragins, 221 Ala. 150, 128 So. 149 (1930)). Thus, Branch and Ligon are entitled to Bernice's share of the trust property. We affirm the trial court's summary judgment awarding Miles Branch and Susan B. Ligon Bernice's interest in the Baldwin Trust.
AFFIRMED.
HOUSTON, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
LYONS, J., concurs specially.
LYONS, Justice (concurring specially).
I concur fully in the main opinion. I write specially to memorialize a unique feature of this proceeding.
Most cases, of necessity, involve at least one lawyer who will not prevail. "May the best case win" is a saying we hear from time to time around a courtroom at the beginning of the proceedings. This enables the lawyer who ultimately does not prevail to ease the pain by telling himself, if no one else, that while the client had the best lawyer, the client did not have the best case.
I cannot apply that saying in all respects to this case because I do not want to insinuate in any way that counsel for Branch and Ligon, the prevailing party in this appeal, i.e., the party with "the best case," was in any way inferior to counsel for Claude's son. But I will carve out so *489 much of it as is necessary to observe that it is my duty as an Associate Justice to decide cases based on my best judgment as to the proper application of the law to the facts or, put another way, based on who had "the best case." I have done so in this case, notwithstanding my awe over the fact that counsel for the unsuccessful party, D. Harry Markstein, Jr., briefed and argued this case on March 18, 2003, at the age of 90. In so doing, he probably quite easily holds the record as the oldest member of the Alabama State Bar to appear before this Court.
While he did not prevail, Mr. Markstein quite ably represented his client with zeal, clarity of thought, and legal scholarship that lawyers many years his junior would do quite well to emulate. Perhaps, on another day, we can note Mr. Markstein's eclipse of his own record with a ruling in a setting where he has "the best case."
NOTES
[1] On December 9, 1996, Claude's son petitioned to have a conservator appointed for his father, who he alleged was incompetent. The probate court first appointed Claude's son as the conservator, but later amended its order to appoint James M. Tingle as Claude's conservator.
[2] Julia sought to have the trust declared invalid. Claude's son moved for a summary judgment upholding the validity of the Baldwin Trust, which the trial court entered. Julia appealed. On April 25, 2003, this Court reversed the summary judgment and remanded the case to the trial court to determine the issues of material fact regarding the validity of the Baldwin Trust. Baldwin v. Estate of Claude H. Baldwin, Jr., 875 So.2d 1138 (Ala.2003)("Baldwin I"). This appeal, which was filed on March 12, 2002, was placed on this Court's administrative docket pending the entry of a final judgment in Baldwin I. On November 10, 2003, the trial court entered a consent order in which it found that the "Baldwin Trust is valid and owns the assets conveyed to it by Claude Baldwin, Jr."
[3] In granting the motion filed by Claude's son to strike the affidavit of the attorney who drafted the Baldwin Trust and Claude's will, in which Claude's son argued that the trust was unambiguous, the trial court effectively found the trust to be unambiguous. The parties stipulate that there are no disputed questions of fact in this case.
[4] Article VI, entitled "Spendthrift Provision," reads:

"No interest in income or principal shall be alienated, encumbered, or otherwise disposed of by any beneficiary while in the possession and control of the Trustee, and if any beneficiary should attempt to alienate, incumber [sic], or dispose of all or part of the income or grants of principal before the same has been delivered to the Trustee, if of by reasons of assets remaining in the hands of the Trustee under claims of creditors or otherwise, all or any part of such income or principal might fail to be enjoyed personally by any beneficiary or might vest in or be enjoyed by some other person, then such interests shall terminate. Thereafter, the Trustee may pay to or for the benefits of such beneficiary such income or principal comprising such interest as the Trustee, in the Trustee's discretion shall deem proper until such beneficiary dies. Thereupon, the trust estate or part affected shall be held or distributed as hereinabove provided for disposition upon the death of such beneficiary; if not herein provided, distribution shall be to such persons as would take and in the proportions they would take such beneficiary's estate under the Alabama laws of descent and distribution then in effect."
[5] In Russell, Mrs. Russell argued that Mr. Russell's transfers to his trust during his lifetime should have been set aside because they deprived her of her elective share. 758 So.2d at 538. We noted that before the adoption of the current Alabama Probate Code in 1982, the spouse's elective share was a portion of the augmented estate. Id. The augmented estate includes transfers of the decedent made during his lifetime. However, we concluded that because Alabama rejected the augmented-estate concept when it enacted the current Probate Code, the surviving spouse was not entitled to a share of assets that were validly transferred by the decedent during his lifetime. Id. We address today a different question, namely, when a transfer to a revocable trust vests in the beneficiary.