MURDOCK, Justice.
 

 Judy D. Byrom (“Judy”) petitioned this Court for a writ of certiorari to review the Court of Civil Appeals’ decision in a plurality opinion in
 
 Byrom v. Byrom,
 
 47 So.3d 783 (Ala.Civ.App.2007). We granted the writ; we now affirm.
 

 Judy and Jerry Thomas Byrom (“Jerry”) married in October 1982. In 1999, Judy and Jerry executed a trust agreement creating a revocable trust known as the Desoto Star Holdings trust (“the Deso-to trust”), and they conveyed certain real property into the Desoto trust. Richard G. Pridmore served as the initial trustee of the Desoto trust.
 

 The trust agreement provided that Judy and Jerry were the “beneficiaries” of the trust. As “beneficiaries,” Judy and Jerry were “entitled to all of the earnings, avails and proceeds of the Trust Property according to their interests set opposite their respective names” on Exhibit “B” to the trust agreement. Exhibit “B” stated that Judy and Jerry each held a 50% interest in the trust. The trust agreement continued:
 

 “4. INTERESTS.
 
 The interests of the Beneficiaries shall consist solely of the following rights respecting the Trust Property:
 

 “a. The right to direct the Trustee to convey or otherwise deal with the title to a Trust Property as hereinafter set out.
 

 “b. The right to manage and control the Trust Property.
 

 “c. The right to receive the proceeds and avails from the rental, sale, mortgage, or other disposition of the Trust Property.
 

 “The foregoing rights shall be deemed to be personal property and may be assigned and otherwise transferred as such.
 
 No Beneficiary shall have any legal or equitable right, title or interest, as realty, in or to any real estate held in trust under this Agreement, nor the right to require partition of that real estate, but shall have only the rights, as personalty, set out above, and
 
 the death of a Beneficiary shall not teminate this Trust
 
 or in any manner affect the powers of the Trustee.”
 

 (Emphasis added.)
 

 Also, the trust agreement states that “[t]he terms and conditions of this Agreement
 
 shall inure to the benefit of
 
 and be binding ... upon the
 
 executors, administrators, heirs,
 
 assigns and all other
 
 successors in interest of the Beneficiaries.”
 
 (Emphasis added.)
 

 Jerry died in June 2001. He was survived by Judy, and by his three children: Jerry T. Byrom, Jr., Lisa B. Ratcliff, and Julee B. Couch. Jerry’s will was admitted to probate in the Madison Probate Court.
 
 [1]
 
 Jerry’s children and Judy are beneficiaries under Jerry’s will.
 
 [2]
 

 
 *793
 
 In April 2002, the administration of Jerry’s estate was removed to the Madison Circuit Court (“the trial court”).
 

 After Jerry’s death, certain creditors obtained judgments against his estate. Thereafter, in September 2003, Paul Frederick, as personal representative of Jerry’s estate, filed a complaint in the trial court seeking, among other things, a declaration that Jerry’s interest in the Desoto trust became the property of Jerry’s estate upon his death. In May 2005, Frederick filed a report of insolvency in the trial court concerning the estate. The report described approximately $2,373,735 in “potential unpaid debts,” including in part the creditors’ claims described above, and substantially less in assets belonging to the estate, though the value of certain assets was allegedly unknown. In July 2005, after conducting a hearing on Frederick’s petition, the trial court entered an order declaring Jerry’s estate insolvent. Thereafter, Frederick resigned as personal representative, and the trial court appointed Jerry T. Byrom, Jr., as personal representative of the estate (“the personal representative”).
 
 [3]
 

 Judy opposed the personal representative’s claim that Jerry’s beneficial interest in the Desoto trust passed to his estate at his death. She argued that Jerry’s beneficial interest in the Desoto trust passed to her upon Jerry’s death.
 

 After conducting a proceeding at which evidence was presented ore tenus, the trial court entered a judgment on the personal representative’s claims. The judgment stated that the Desoto trust agreement
 

 “d[id] not provide for what happens to the beneficial interest of the deceased upon ... death. Therefore, this Court must look to Alabama law to decide this issue. Accordingly, pursuant to the ‘residue of the residue rule’ of Alabama Code (1975) Section 43-8-225(b), as well as the intent of Jerry and Judy as Set-tlors of [the Desoto trust], Jerry’s interest in [the Desoto trust] passed to Judy upon the death of Jerry.”
 

 The personal representative appealed to the Court of Civil Appeals. He argued, in part, that the trial court had wrongly applied Ala.Code 1975, § 43-8-225(b), to the Desoto trust. In a plurality decision, the Court of Civil Appeals “reverse[d] the trial court’s judgment insofar as it declared that Jerry’s beneficial interest in [the Desoto trust] passed to Judy upon Jerry’s death.”
 
 [4]
 

 Byrom,
 
 47 So.3d at 790. Judy filed an application, for rehearing, which the Court of Civil Appeals denied. Judy then filed a petition for a writ of certiorari with this Court on the ground that the
 
 *794
 
 case presented a material question of first impression.
 
 See
 
 Rule 39(a)(1)(C), Ala. R.App. P. We granted the writ to consider her argument that Ala.Code 1975, § 43-8-225(b), was applicable to the Desoto trust and that, under § 43-8-225(b), Jerry’s beneficial interest in the Desoto trust passed to her at Jerry’s death and not to Jerry’s estate.
 

 Standard of Review
 

 The trial court’s judgment and the decision of the Court of Civil Appeals turned on the interpretation and application of § 43-8-225(b). Because the issue before us presents a pure question of law, we review the matter de novo, without any presumption of correctness.
 
 Simcala, Inc. v. American Coal Trade, Inc.,
 
 821 So.2d 197, 200 (Ala.2001).
 

 Analysis
 

 Section 43-8-225(b), Ala.Code 1975, is an “antilapse” statute contained in the article of the Probate Code addressing the construction of wills.
 
 See
 
 Ala.Code 1975, Title 43, Article 8 (“Construction of Wills”). Section 43-8-225(b) states:
 

 “Except as provided in section 43-8-224 if the residue is devised to two or more persons and the share of one of the residuary devisees fails for any reason, his share passes to the other residuary devisee, or to other residuary devisees in proportion to their interests in the residue.”
 

 The Court of Civil Appeals concluded that because the Desoto trust was not a will, § 43-8-225(b) was inapplicable.
 
 Byrom,
 
 47 So.3d at 788.
 

 In
 
 Baldwin v. Branch,
 
 888 So.2d 482 (Ala.2004), this Court considered the issue whether another antilapse statute, Ala. Code 1975, § 43-8-224, which is referenced in § 43-8-225 and which is also included within Article 8 of the Probate Code, should apply to a revocable trust.
 
 [5]
 
 As this Court described it, § 43-8-224 “operates, in the case of a will, to prevent a lapse when a devisee dies before the testator.” 888 So.2d at 484. This Court held that § 43-8-224 did not apply to trusts. We explained that “there is no similar statutory provision to prevent a lapse of a gift made in a revocable trust,” that § 43-8-224 “mentions only wills, not trusts,” and that, “[t]herefore[,] the plain language of § 43-8-224 indicates that it does not apply to trusts.” 888 So.2d at 484. We further rejected the argument that we should follow some other “jurisdictions in which courts have found that an antilapse statute, on its face applicable only to wills, reaches trusts as well.” 888 So.2d at 485.
 

 “This Court has previously expressed a reluctance to rewrite the Alabama Probate Code to accommodate the use of a revocable trust as a substitute for a will. In
 
 Russell v. Russell,
 
 758 So.2d 533, 538 (Ala.1999), this Court refused to read into the Alabama Probate Code the ‘augmented estate concept’ rejected by the Legislature in 1982 when it reenacted the Probate Code. To hold that Alabama’s antilapse statute applies to trusts, this Court would have to invade the Legislature’s power to amend statutes. We are not willing to do so;
 
 *795
 
 therefore, Branches] ... argument that Alabama’s antilapse statute applies to trusts fails.”
 

 Baldwin,
 
 888 So.2d at 485.
 

 The reasoning of
 
 Baldwin
 
 applies with equal force in the present case. By its terms, § 48-8-225 is applicable to wills, not trusts, and is thus inapplicable, absent a legislative act that directs its application to trusts.
 

 Judy does not argue that
 
 Baldwin
 
 was erroneously decided. Instead, she notes that § 19-3B-112, Ala.Code 1975, which is part of the Alabama Uniform Trust Code, states:
 

 “Except as otherwise provided in this chapter, the rules of construction under Title 43, Chapter 8, Article 8, and the miscellaneous provisions of Article 9 that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property.”
 

 Judy’s argument as to the application of § 19-3B-112 in the present case is incorrect. The Alabama Uniform Trust Code, Ala.Code 1975, § 19-3B-101 et seq., including § 19-3B-112, was adopted in March 2006 but did not become effective until January 1, 2007, several months after the trial court entered the judgment at issue in this case.
 
 See
 
 Ala. Acts 2006, Act No. 2006-216, § 6 (“This act shall become effective January 1, 2007, following its passage and approval by the Governor, or its otherwise becoming law.”). Although the Uniform Trust Code contains a retroactivity provision that makes it applicable to, among other things, “judicial proceedings concerning trusts commenced before January 1, 2007,” under certain circumstances,
 
 see
 
 Ala.Code 1975, § 19-3B-1204(a)(3), neither § 19-3B-1204 nor § 19-3B-112 were in effect when the trial court entered its judgment. Thus, those provisions were not effective law at the time the trial court entered its judgment and therefore could not have provided the basis for an application by the trial court of § 43-8-225(b) to the Desoto trust.
 
 [6]
 

 Also, we must presume that the legislature was aware of this Court’s decision in
 
 Baldwin.
 
 For all that appears, its enactment of § 19-3B-112 was in response to this Court’s conclusion in
 
 Baldwin
 
 that “to hold that Alabama’s antilapse statute applies to trusts, this Court would have to invade the Legislature’s power to amend statutes.” 888 So.2d at 485. For whatever reason, the legislature chose to postpone the effective date of the Uniform Trust Code until January 1, 2007. Unless our unwillingness “to invade the Legislature’s power to amend statutes” has subsided since
 
 Baldwin,
 
 which it has not, we must respect the choice of the legislature in this regard.
 
 [7]
 

 In light of the fact that the above-referenced provisions of the Uniform Trust Code had not taken effect as of the date the trial court entered its judgment, the rationale of
 
 Baldwin
 
 provides the answer to the issue whether statutory antilapse provisions such as §§ 43-8-224 and 43-8-225, which by their terms are applicable
 
 *796
 
 only to wills, might apply to trusts. Thus, the Court of Civil Appeals’ decision as to the inapplicability of § 43-8-225(b) to the Desoto trust is correct.
 
 [8]
 

 Based on the foregoing, we affirm the judgment of the Court of Civil Appeals.
 

 AFFIRMED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . The person who was nominated in Jerry’s will to serve as executor did not seek appointment as such. Paul Frederick was appointed by the court as administrator cum testamento annexo (administrator with the will annexed). Frederick was actually the second administrator cum testamento annexo; the first resigned because the ”[e]state appear[ed] ... to be unusually complex and requiring knowledge ... of trust and tax matters which is beyond the expertise of [the first administrator].”
 

 [2]
 

 . Jerry had what appears to be a complex estate plan involving certain testamentary trusts, several inter vivos trusts (including the Desoto trust), and other planning devices or entities. The record reflects a variety of disputes between Jerry’s children and Judy,
 
 *793
 
 among others. We have recited only those facts necessary to resolve the issue before us.
 

 [3]
 

 . One of the creditors of Jerry’s estate nominated Jerry T. Byrom, Jr., to serve as the successor to Frederick.
 

 [4]
 

 . In addition to his argument concerning the application of § 43-8-225(b), the personal representative also challenged the trial court’s reliance on extrinsic evidence to determine that " 'the intent of Jerry and Judy as Settlors of [the] Desoto [trust], [was that] Jerry’s interest in [the] Desoto [trust] passed to Judy upon the death of Jerry.' ”
 
 Byrom,
 
 47 So.3d at 787. The personal representative argued that the Desoto trust agreement reflected no such intent and that the agreement was not ambiguous so as to allow the admission of extrinsic evidence to prove such intent. Judge Bryan, who authored the main opinion in
 
 Byrom,
 
 and Judge Thomas agreed with the personal representative’s argument; the remaining judges concurred in the result.
 
 Id.
 
 at 788-91.
 

 Judy did not argue in her petition to this Court that she should have prevailed in the Court of Civil Appeals based on the alleged evidence of her and Jerry’s intent. Thus, we do not address that issue. The only issue we address concerns the applicability of § 43-8-225(b).
 

 [5]
 

 . Section 43-8-224 provides in part that "[i]f a devisee who is a grandparent or a lineal descendant of a grandparent of the testator is dead at the time of execution of the will, fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee who survive the testator by five days take in place of the deceased devi-see...." Like § 43-8-224, § 43-8-225 is intended to prevent the failure of a devise in a manner that would result in intestacy.
 
 See
 
 Commentary to § 43-8-225 (noting that before the enactment of § 43-8-224 the share of a deceased residuary devisee "went to the testator's next of kin according to the statute of distribution”).
 

 [6]
 

 . The personal representative notes that Judy did not argue that § 19-3B-112 was applicable until she filed her application for rehearing in the Court of Civil Appeals. Thus, it is not clear whether the trial court was presented with the issue whether that section, along with § 19-3B-1204, might form a basis for applying § 43-8-225 to the Desoto trust.
 

 [7]
 

 . Judy’s sole argument concerns the application of § 43-8-225(b); she does not argue that under common-law principles the rules of construction applicable to wills should also apply to trusts. Thus, we do not address that issue.
 

 [8]
 

 . Even if § 19-3B-112 had been in effect as of the date the trial court entered its judgment, that section specifically states that the rules of construction applicable to wills only “apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property.” Given the absence of a residuary clause in the Desoto trust itself, the application of § 43-8-225(b) arguably would not be "appropriate.”