**Pew Trust.**

**Morris Appeal et al.**

Argued March 14, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

 reargument refused July 30, 1973.

*Philip A. Bregy,* with him *M. Paul Smith, Henry S. Bryans, Cuthbert H. Latta* and *George L. Haskins,* for appellants.

*David English Carmack,* Assistant United States Attorney, with him *Crombie J. D. Garrett* and *Meyer Rothwacks,* Assistant United States Attorneys, *Robert N. de Luca,* Assistant United States Attorney, *Scott P. Crampton,* Assistant Attorney General, and *Robert E.*

*J. Curran,* United States Attorney, for United States, appellee.

*Catherine R. Barone,* Assistant Attorney General, *Dante Mattioni,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Commonwealth of Pennsylvania, appellee.

*Francis M. Richards, Jr.,* and *Michael W. Freeland,* for The Glenmede Trust Company, appellee.

OPINION PER CURIAM, July 2, 1973:

Decree affirmed on the opinion of President Judge TAXIS of the Orphans' Court of Montgomery County:

"This matter comes before the Court by way of a Declaratory Judgment filed by I. Wistar Morris, III, seeking a ruling as to whether the remainder interest of Eleanor Pew Morris in the above trust is vested or contingent.

"Responsive answers were filed, the matter argued and the case is now ready for ruling.

"The identical question under this Deed of Trust has been fully argued and a ruling made in Pew Trust-Benson Estate, 447 Pa. 62, 285 A. 2d 101, decided by the Supreme Court on December 20, 1971.

"This Court is mandated to follow the Supreme Court in Pew Trust-Benson Estate, supra, and concludes that Pew Trust-Benson Estate rules this case and that the interest of Eleanor Pew Morris is a vested interest for reasons fully set forth by Mr. Justice ROBERTS in that matter. It is so ordered and decreed. . . ."

Each party to pay own costs.

———

DISSENTING OPINION BY MR. CHIEF JUSTICE JONES:

Joseph N. Pew, Jr. (settlor) created several inter vivos trusts on June 1, 1932, one of which he funded with 30,000 shares of Sun Oil Company. He directed

the trustees that the fund of this particular trust was to be held intact *during the lifetime of his wife;* that *upon her death* the trust was to be divided into four shares, one for each of his children; that 20% of the principal of each child's share was to be paid to him or her upon reaching age 24, another 30% upon reaching age 28, and the remaining 50% upon reaching age 32—the income from the undistributed principal to be payable to the child in the meantime; and that if any child should die before reaching age 24, 28 or 32, the undistributed principal of his or her share was to pass to his or her children or, in default of children, it should be divided among the other shares.

The settlor's wife is still alive and presently receiving all the income from the trust fund. In 1966 Eleanor Glenn Pew Morris, a daughter of the settlor, died at the age of 48. Her four children survived her and are still living. The Internal Revenue Service included an indefeasibly vested one-fourth remainder interest of the trust in the audit of the federal estate tax return for Mrs. Morris' estate. One of Mrs. Morris' four children however, filed a petition for a declaratory judgment seeking a ruling on the nature of Mrs. Morris' remainder interest in the trust. On May 30, 1972, the lower court ruled that she had an indefeasibly vested one-fourth interest. This appeal by Mrs. Morris' four children followed.

In *Benson Estate,* 447 Pa. 62, 285 A. 2d 101 (1971),[1] this Court construed the interest of Mary Pew Benson, Mrs. Morris' sister, and held that the principal of her share was not a contingent remainder but rather an interest that vested indefeasibly in the child upon reaching the age of 32 *even though the mother was still*

---

[1] *Benson* concerned a principal share of a different family line and the present appellants were not parties. That decision—a three-to-two decision—did not reflect the view of a majority of the Court.

*living.* Today a majority of the Court reaffirms its holding in *Benson.*[2]

In my view, the majority opinion in *Benson* failed to consider a vital phrase in the deed of trust. Paragraph 3 dealt with the disposition of the trust fund after settlor's wife's death and began with the words "Upon the death of my said wife". Whereas the majority passed over these words without comment, my brother POMEROY properly recognized their fundamental significance. In his dissenting opinion in *Benson,* he said: "It seems incontrovertible to me that paragraph 3 . . . is flatly conditioned upon the death of the settlor's wife, Alberta H. Pew. Until that occurs, there is to be no division into shares for children, including this decedent, and *all the language of that paragraph, spelling out what happens to each share for children, is so far inoperative.* The instrument nowhere expressly gives this decedent any interest of any kind in the trust estate, even a right to any portion of income, until the death of her mother; I cannot see the justification for construing it as if it does. *In my view, the reading of the majority effectively extirpates the words 'Upon the death of my said wife, Alberta H. Pew', which introduce the third paragraph and constitute a precondition to all of its provisions.*" 447 Pa. at 73-74, 285 A. 2d at 107.

More importantly, a determination of whether the settlor's daughters had a contingent or vested remainder should be controlled by *Thompson Trust,* 363 Pa. 85, 69 A. 2d 112 (1949). In *Thompson,* a settlor's deed of an inter vivos trust provided that the trustee was to collect dividends and pay them to settlor's granddaughter for her life and from and after her death to pay the dividends to her children (settlor's great grandchildren). As each child reached the age of 21, the trustee was to transfer to each child a pro rata share of stock

---

[2] I took no part in the consideration or decision in *Benson.*

and, in default of any such child reaching 21, to transfer said stock to the settlor's heirs. This Court held that the great granddaughter who predeceased her mother, having attained the age of 21 years and 26 days, had a contingent remainder. In *Thompson*, after examining the trust instrument, this Court reasoned that there were no express words of gift independent of the direction and time for transfer. Since the gift was implied from the direction to transfer, it was inseparable from the direction and necessarily partook of the quality of the direction; that is, the gift was to be made to the great granddaughter only if she survived her mother and attained the age of 21. Similarly, the interests of settlor's daughters in the present case are unquestionably contingent on their surviving their mother and attaining the designated ages.

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The lower court was of course obliged to decide this case as it did, the trust instrument being the same instrument and the question of interpretation being the identical question that was before this Court in *Benson Estate*, 447 Pa. 62, 285 A. 2d 101 (1971). In that case this Court, by the narrow vote of three to two, held that the remainder interest of Mary Pew Benson was a vested interest. I was convinced at that time that this decision was in error, and the able arguments put to us in the present case on behalf of the estate of Mrs. Benson's sister, Eleanor Pew Morris, have but served to confirm my conviction, viz., that whatever "vested" may mean, the interests of the children of this settlor do not qualify as such. I must therefore again dissent from the Court's interpretation of the deed of trust here involved.

It may be said that with respect to the same trust instruments, there cannot be one rule in the case of Mary Pew Benson and another rule in the case of her

sister, Eleanor Pew Morris. But the Court's prior decision is clearly not res judicata, nor is it the "law of the case" with respect to the separate share of Eleanor. *Brown Estate,* 408 Pa. 214, 183 A. 2d 307 (1962). Although it may seem anomalous to subject the interest of these siblings to different tax treatment, two wrongs do not make a right. I am convinced that the just and proper action for the court now to take is to avoid duplicating the error of *Benson.* I therefore would uphold the position of the present appellants, and would reverse the decree below.

DISSENTING OPINION BY MR. JUSTICE MANDERINO:

I respectfully dissent.

The *main question* in this case *is not* whether the testatrix had a vested or contingent remainder. The main question is whether the testatrix, while living, received any property from the settlor, her father, which was a part of her gross estate at the time of her death. This depends on what the *settlor intended* as known by his deed of trust. The answer *is clear.* The trust provided that the trustees *divide and pay* over *after the death* of the life beneficiary. Words of *divide and pay* after a life interest carry an implication of a condition precedent of survivorship. Simes L., The Law of Future Interests, Vol. II, Chapter 24, §393-395 (1936). In addition, the settlor specifically stated that any principal or income *"shall only become the property of the beneficiary when actually received."* These words are unequivocal. How could the testatrix be said to have owned anything from her father's estate when he *unequivocally said* she had nothing *until she received it.* The spendthrift clause in this case must be read *as it reads* and it *prohibits* the inclusion of any property in testatrix's gross estate until she actually receives that property.

A *vested estate* frequently has value during a person's lifetime. The interest in question in this case gave absolutely nothing of any value to the testatrix during her lifetime and nothing to transmit at her death. The settlor so provided and we should follow his *unequivocal statement of intent.*