STATE OF MAINE                          SUPERIOR COURT
HANCOCK, SS.                            CIVIL ACTION
                                        Docket No. CV-04-23
                                        JT 4 ·*/·/·- 9/7/05


Jennifer Audette et al.,
        Plaintiffs


        v.                              Order (Motion for Summary Judgment)


Ralph Brown et al.,
        Defendants


        Pending before the court is the summary judgment motion filed by defendants

Ralph Brown and Diana B. Brown.  The court has reviewed the parties' submissions on

the motion.

        The plaintiffs in this action are the children of Russell Brown, who is Ralph

Brown's brother.  The plaintiffs sought a judgment confirming their interest in real

property located in Castine.  Through the motion at bar, the movants seek an adjudication

as a matter of law that the plaintiffs have no such interest and that they (the movants)

alone hold title to the property.  A party is entitled to summary judgment when the record

shows that there is no genuine issue of material fact and that the moving party is entitled

to judgment as a matter of law.  M.R.Civ.P. 56(c); *see also Darlings v. Ford Motor Co.*,

2003 ME 21, ¶ 14, 817 A.2d 877, 879.  The motion court views the evidence in the light

most favorable to the non-moving party.  *Benton Falls Associates v. Central Maine

Power Company*, 2003 ME 99, ¶ 10, 828 A.2d 759, 762.

        The questions of title are generated by a series of transactions among members of

the parties' family affecting ownership interests.  For purposes of this action, the first

material transaction occurred in 1976, when John Brophy conveyed title to Merial Brown

(mother of Russell and Ralph), Elizabeth Brophy (Merial's sister), Ruth Wilson (another

1

sister) and Ralph.[1] Each of the grantees, who were tenants in common, thereby acquired an undivided 25% interest in the property. Ruth died in 1977, and her heirs, Carolyn Wilson and Robert Wilson (Ruth's children) inherited her 25% interest. In 1981, Ralph conveyed his 25% interest to Merial, who thus came to own an undivided 50% interest.

The following year, Merial and Elizabeth created a trust, into which they conveyed their interests in the property, which amounted cumulatively to a 75% interest. (Ruth's heirs continued to hold the remaining 25%.) Merial and Elizabeth were the beneficiaries (designated as "trustors" in the Declaration of Trust), and they and Russell were named as the trustees. Under the Declaration of Trust, the trustees were to maintain the corpus "for the use of the Trustors['] family." The instrument also recited that the family desired "to continue to own and use the property for the benefit of the family members and to ultimately pass the property to the descendents of the Brown (Brophy) family." The terms of the trust reserved to Merial the right to convey the 25% interest she had inherited "in order to provide for her support and maintenance, or to redirect the beneficial interest therein." If that interest remained in the trust when she died, then half of that 25% interest would be held for Russell's benefit, and the other half of that interest would be held for Ralph's benefit. Additionally, the 25% interest that Merial acquired from Ralph would be held in trust for Ralph's benefit alone. Those respective interests to be held for the benefit of Ralph and Russell each would "continue to be held in trust so that the property may be administered as a whole for the benefit of the family during the life of Ralph D. Brown and Russell S. Brown and until their children are mature as hereinafter provided."

The Declaration of Trust also provided that upon Elizabeth's death, the 25% interest she conveyed into the corpus would be held for Ralph's benefit for the same family-related purpose associated with maintenance of the interest flowing from Merial.

Merial died in 1997, and Elizabeth died in 2000.

The instrument then addressed the disposition of the property when both Ralph and Russell die and when the youngest of all of their children is 25 years old. At that point, the trust would terminate; the interest held for Ralph's benefit would be distributed

---

[1] The trust instrument, executed in 1982, suggests that the 1976 conveyance was part of an inheritance from the John Brophy's estate.

to his children; and the interest held for Russell's children would be distributed to his children. Alternatively and preferably, the children were authorized to create a new trust "to hold and manage the property for the benefit of the Brown family." However, the creators of the trust articulated their acknowledgement "that the passage of time and circumstances may change and that it may not be feasible and therefore this desire is expressed as a wish, not as a command."

Notwithstanding the dispositional features of the Declaration of Trust, it also provided, "Nothing contained herein shall prevent family members from acquiring beneficial interests of other family members or from transferring such interests to other family members, i.e., RALPH D. BROWN or RUSSELL B. BROWN may hereafter wish to acquire the interest of RUTH B. WILSON and place it into this Trust to complete ownership of the trust property."

Subsequent to the creation of the trust in 1982, there were additional transactions that purported to transfer ownership interests in the property. Ralph and Diana contend that as a result of those transactions, they are now the sole owners of the property. The motion opponents challenge the effectiveness of some of those transactions. In July 1991, Merial and Elizabeth transferred a 50% interest in the property (which can only be an interest that was part of the trust's corpus) to Ralph. If effective, Ralph then owned a 50% interest in the property; the trust retained a 25% interest; and the remaining interest stayed with Ruth's heirs. Ralph then purported to convey his 50% interest to his children, who are parties-in-interest Leslie Chalmers, Matthew B. Brown and Christopher Brown. If this conveyance was effective, each of those grantees acquired a 1/6 interest in the property (1/3 of Ralph's 50%). In 2000, however, Leslie, Matthew and Christopher released their interests back to Ralph. Two years later, Carolyn Wilson and Robert Wilson conveyed to Ralph the 25% interest they had inherited from their mother, Ruth. And in 2003, Russell purported to convey his beneficial interest in the trust property to Ralph. Ralph and Diana then engaged in a series of conveyances that resulted in the acquisition by the Brown Family Revocable Trust of the interests that Ralph contends he had acquired.

The motion opponents do not dispute that in 2002 Ralph acquired the 25% undivided interest that Ruth owned and that her children conveyed directly to him.

3

However, the motion opponents contest the validity of the transactions that, Ralph argues, resulted in his acquisition of the remaining 75% ownership interest that had passed through the trust. Therefore, the motion draws focus on, first, the 1991 conveyance when Ralph contends he acquired a 50% interest in the property; second, the nature of the interest he acquired when Merial and Elizabeth died; and, third, on the 2003 conveyance from Russell to Ralph allegedly transferring a 25% interest. The second and third transaction, however, are subject to the same analysis here, because they both raise the question of the nature of the interest that Ralph and Russell acquired upon the deaths of Merial and Elizabeth. In the end, the court cannot conclude as a matter of law that these three events were effective to convey to Ralph absolute undivided ownership interests.

Section 5.07 of the Declaration of Trust states that members of the Brown family, which includes the parties at bar and all others involved in transactions germane to this proceeding, are free to transfer beneficial interests to other family members. Section 2.01 authorized the trustors, when acting simultaneously, to "alter or divest the interest of the beneficiaries. . . ." Taken alone, these provisions might have authorized Merial and Elizabeth to transfer 50% of the corpus to Ralph in 1991. However, the terms of a trust instrument must be construed as a whole, with the ultimate objective of honoring the trustors' intent. *University of Maine Foundation v. Fleet Bank*, 2003 ME 20, ¶ 9, 817 A.2d 871, 874. The free reign that sections 5.07 and 2.01 might be seen to create is at least arguably cast in a more restrictive light when other provisions of the trust are considered. For example, the express purpose of the trust is to allow members of the Brown family to use and enjoy the property in Castine. This goal would not be achieved if title to the property effectively ended up with one such member individually, to the exclusion of others. Similarly, the specific conveyance power given to Merial is limited by the express terms of the Declaration of Trust. In section 4.06, she reserved the right to transfer the 25% interest she conveyed into the trust, "in order to provide for her support and maintenance, or to redirect the beneficial interest therein." With respect to the first of these permitted circumstances, nothing in the record suggests that her participation in the 1991 conveyance was designed to provide for her material needs. Further, Ralph does not contend here that he now hold a beneficial interest resulting from that

4

transaction. Rather, he argues that he (in the form of his own family's trust) owns it. Placing that interest in the form of his own family's trust cannot be equated, as a matter of law, with the continuation of a beneficial interest created by the trust at issue here. These factors, and perhaps others, create ambiguities within the Declaration of Trust, *see First National Bank of Bar Harbor v. Anthony*, 557 A.2d 957, 960 (Me. 1989), and generate triable questions of whether the 1991 conveyance from Merial and Elizabeth to Ralph was proper under that instrument.

Ralph also contends that as a result of the deaths of Merial and Elizabeth, he acquired a certain ownership interest in the property that is free from claims or interests asserted by other family members. The record does not establish this proposition as a matter of law. In section 5.02, the Declaration of Trust provides that upon the death of Merial or Elizabeth, the interest associated with those trustors would be held for the benefit of one or both sons (Ralph and Russell) "in trust so that the property may be administered as a whole for the benefit of the family" during the sons' lifetimes and until their own children are "mature." Further, under section 2.02 of the Declaration of Trust, the trust became irrevocable when the first of the trustors died, which occurred in 1997. Ralph's argument at bar amounts to a contention that the interest he received as result of the deaths of Merial and Elizabeth, and the interest that Russell acquired in that way and later released to him, is free from claims of persons such as the plaintiffs, who claim to hold a remainder interest. At the very least, however, the Declaration of Trust creates a genuine basis on which to argue that Russell and Ralph acquired a life estate in the 25% ownership interest they acquired as a result of the deaths of Merial and Elizabeth. The source of this argument includes not only the provisions of section 5.02, but also the more general expressions in the instrument establishing the purpose of the trust itself.

The movants go on to argue that even if the trust instrument gives the plaintiffs a contingent interest in the property, it is too speculative to be enforceable. This overlooks the fact, however, that the cumulative 25% interest that Ralph and Russell acquired upon the deaths of Merial and Elizabeth is arguably no more speculative or contingent than those claimed by the plaintiffs. When Ralph and Russell both die and the youngest of their children is at least 25 years old, the Declaration of Trust would support a genuine argument that the property would be distributed to those children pursuant to a formula

5

laid out in the instrument, unless the children of Ralph and Russell chose to create a new trust that would hold and manage the property further. While Merial or Elizabeth was alive, the expectancy of Ralph and Russell was qualitatively similar to those of their children: their interest was not vested because the condition to its acquisition had not yet occurred. *See Ziehl v. Maine National Bank*, 383 A.2d 1364, 1368 (Me. 1978). Beyond this observation, the court cannot say as a matter of law that the condition of the demise of Ralph and Russell is too conjectural to defeat an argument that the plaintiffs have a remainder interest. And for the reasons noted above, there is sufficient question about the legal effect of the transactions that otherwise would prevent the plaintiffs from realizing their remainder interests. This also precludes entry of summary judgment.

Finally, the parties have discussed the effect of the language at the end of section 5.03 of the Declaration of Trust, which characterizes some aspect of the intended termination of the trust "as a wish, not as a command." At the very least, the referent of this qualifying language is not made clear within the four corners of the instrument: the qualifying language may refer only to the trustors' expressed preference that the children of Ralph and Russell should create a new trust to hold the property; or it may be a reference to the actual intended distribution of the property to those children.[2] In the context of a summary judgment motion, the final sentence of section 5.03 cannot be seen to undermine the mere existence of a genuine contention that the plaintiffs have a legally protected contingent interest in the trust's corpus.

The entry shall be:

For the foregoing reasons, the motion for summary judgment is denied.

Dated: September 7, 2005

_____
Justice, Maine Superior Court

---

[2] The structure of section 5.03 lends greater support to the former construction. However, it is not free from ambiguity, which thereby, for present purposes, precludes any disposition of the question as a matter of law.

6

**FILED & ENTERED**

SEP 1 3 2005

**SUPERIOR COURT HANCOCK COUNTY**